UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

*Ex parte* CELLECT LLC,
Patent Owner and Appellant.

———————————

Appeal 2021-005303
Reexamination Control 90/014,453
U.S. Patent No. 6,982,742
Technology Center 3900

———————————

**PATENT OWNER CELLECT LLC'S
NOTICE OF APPEAL**

Patent Owner's Notice of Appeal
Appeal 2021-005303 (U.S. Patent No. 6,982,742)

Pursuant to 35 U.S.C. §§ 141 and 142 and 37 C.F.R. §§ 90.2 and 90.3,

Patent Owner, Cellect, LLC, hereby provides notice that it appeals to the United

States Court of Appeals for the Federal Circuit from the Decision on Appeal of the

Patent Trial and Appeal Board ("the Board") entered December 1, 2021, and from

all underlying orders, decisions, rulings, and opinions regarding U.S. Patent

6,982,742 B2 ("the '742 Patent") at issue in *ex parte* reexamination appeal case

2021-005303.

Copies of Patent Owner's Notice of Appeal are being filed simultaneously

with the Director of the United States Patent and Trademark Office, the Patent

Trial and Appeal Board, and the United States Court of Appeals for the Federal

Circuit.

Respectfully submitted,

Dated: December 21, 2021

/Jonathan S. Caplan/
Jonathan S. Caplan, Reg. No. 38,094
JCaplan@KRAMERLEVIN.com
KRAMER LEVIN NAFTALIS &
FRANKEL
1177 Avenue of the Americas
New York, New York 10036
Tel: 212.715.9488   Fax: 212.715.8000

(Appeal No. 2021-005303)          *Counsel for Patent Owner*

1

Patent Owner's Notice of Appeal
Appeal 2021-005303 (U.S. Patent No. 6,982,742)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies, in accordance with 37 C.F.R. §§ 42.6(e),

90.2(a)(3)(i) that service was made on the Third Party Requester as detailed below.

*Date of Service*    December 21, 2021

*Manner of Service*    First Class U.S. Mail

Scott A. McKeown
(scott.mckeown@ropesgray.com)
**ROPES & GRAY LLP**
2099 Pennsylvania Ave NW
Washington, DC 20006-6807

Alexander Middleton
(alexander.niddleton@ropesgray.com)
Matthew R. Shapiro
(Matthew.Shapiro@ropesgray.com)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600

James L. Davis, Jr.
(james.l.davis@ropesgray.com)
**ROPES & GRAY LLP**
1900 University Avenue
6th Floor
East Palo Alto, CA 94303-2284

**ROPES & GRAY LLP**
IPRM Docketing – Floor 43
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600

*Documents Served*    PATENT OWNER CELLECT LLC'S NOTICE OF
APPEAL

*Persons Served*    Scott A. McKeown
Alexander Middleton
Matthew R. Shapiro
James L. Davis, Jr.
IPRM Docketing – Floor 43

In addition, the foregoing Patent Owner's Notice of Appeal was filed by

Express Mail on December 21, 2021, with the United States Patent and Trademark

Office at the following address:

Patent Owner's Notice of Appeal
Appeal 2021-005303 (U.S. Patent No. 6,982,742)

Office of the General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

The undersigned hereby certifies that the foregoing Patent Owner's Notice

of Appeal was electronically filed with the United States Court of Appeals for the

Federal Circuit through CM/ECF and pay.gov on December 21, 2021.

Respectfully submitted,

/Jonathan S. Caplan /
Jonathan S. Caplan (Reg. No. 38,094)
JCaplan@KRAMERLEVIN.com
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Tel: 212.715.9488
Counsel for Patent Owner

# ATTACHMENT A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address:  COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,453 | 02/16/2020 | 6982742 | 072374-00002 | 9046 |

31013          7590          12/01/2021
KRAMER LEVIN NAFTALIS & FRANKEL LLP
INTELLECTUAL PROPERTY DEPARTMENT
1177 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

| EXAMINER |
|---|
| KE, PENG |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/01/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* Cellect LLC
Patent Owner and Appellant

_____

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2
Technology Center 3900

_____

Before JAMESON LEE, ALLEN R. MacDONALD, and
MICHAEL J. ENGLE, *Administrative Patent Judges*.

ENGLE, *Administrative Patent Judge*.


DECISION ON APPEAL

STATEMENT OF THE CASE

Pursuant to 35 U.S.C. §§ 134(b) and 306, Appellant[1] appeals from the rejection of claims 22, 42, 58, and 66 of U.S. Patent No. 6,982,742 B2 ("the '742 patent" or "challenged patent") in this *ex parte* reexamination. We have jurisdiction under 35 U.S.C. § 6(b).

We affirm.

_____

[1] Appellant states that the real party in interest is "Cellect LLC, a wholly owned subsidiary of Micro Imaging Solutions LLC." Appeal Br. 2.

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

## TECHNOLOGY

The application relates to "solid state image sensors which are configured to be of a minimum size and used within miniature computer systems known as palm top computers, personal digital assistants (PDA), or handheld computers/organizers." '742 patent, 1:21–26.

## RELATED MATTERS

The challenged patent and its patent family have been involved in a number of proceedings before federal district courts and the USPTO. Appeal Br. 2–3 (listing 1 district court case, 20 *inter partes* review petitions, and 5 *ex parte* reexamination requests). Four of the reexaminations involve substantially similar issues on double patenting. *See* Appeal Nos. 2021-005046; 2021-005258; 2021-005302; 2021-005303.

For the challenged patent, three petitions for *inter partes* review were denied institution because "the scope of challenged claims 22, 42, 58, and 66 is uncertain." IPR2020-00559, Paper 14, at 17 (July 21, 2020); IPR2020-00560, Paper 14, at 16 (July 21, 2020); IPR2020-00561, Paper 14, at 17 (July 21, 2020). As it was not raised in the present proceeding, we do not address indefiniteness here.

## REJECTIONS

Claims 22, 42, 58, and 66 of the '742 patent are rejected for non-statutory double patenting over claims 1, 17, 28, 30, 49, 58, and 61 of U.S. Patent No. 6,424,369 ("the '369 patent" or "reference patent"). Final Act. 13–21.

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

Claims 22, 42, 58, and 66 of the '742 patent are rejected for non-statutory double patenting over claims 1, 17, 28, 30, 49, 58, and 61 of the '369 patent in view of Harris (US 6,009,336). Final Act. 21.

## ISSUE

Did the Examiner err in applying an obviousness-type double patenting rejection to two related patents that (1) claim the same priority date, (2) have different patent term adjustments, and (3) are expired?

## ANALYSIS

### Overview

The challenged patent (the '742 patent) is the child of the reference patent (the '369 patent). The challenged patent issued after the reference patent, but both claim priority to the same application (filed Oct. 6, 1997) so they normally would expire at the same time (Oct. 6, 2017).[2] 35 U.S.C. § 154(a)(2). However, due to various delays by the USPTO during prosecution, both were granted a patent term adjustment ("PTA") under 35 U.S.C. § 154(b), with the challenged patent receiving significantly more PTA than the reference patent (726 days vs. 45 days). Therefore, the reference patent expired *before* the challenged patent. Both patents are now expired, but the statute of limitations for past damages has not yet passed. 35 U.S.C. § 286.

---

[2] We agree with the Examiner that whether the claims are actually entitled to the claimed date is not relevant to a double patenting analysis. Ans. 4, 9; Appeal Br. 21–24. By statute, expiration is based on a priority date "if the application *contains a specific reference to an earlier filed application,*" regardless whether any claim is actually entitled to that priority date. 35 U.S.C. § 154(a)(2) (emphasis added).

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

The timeline below shows the relevant dates for the two patents, including priority, filing, issuance, expiration, and PTA, with the challenged patent on top and its parent (the reference patent) below:



*Timeline for expiration of '742 patent (top) & '369 patent (bottom)*

In this reexamination, the examiners invoked the doctrine of obviousness-type double patenting to reject the claims of the challenged patent as obvious variants of claims in the reference patent. Final Act. 13–21. Appellant does not dispute that the claims of the reference patent would have rendered obvious the claims of the challenged patent. Instead, Appellant argues the reference patent cannot be used for double patenting because (1) a judicially-created doctrine cannot take away statutorily guaranteed time, especially in light of the Federal Circuit's treatment of patent term extensions ("PTE") under 35 U.S.C. § 156, (2) the result would be inequitable given the facts here, and (3) no substantial new question of patentability has been raised because the examiner should have considered double patenting in the original prosecution. *See* Appeal Br. 4–21.

We are not persuaded by Appellant's arguments. First, unlike a PTE under § 156, the statute for a PTA (§ 154) states that any terminal disclaimer should be applied *after* any PTA. Because the primary purpose of a terminal

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

disclaimer is to overcome double patenting, the same rule should apply to double patenting. Moreover, even if double patenting was based on the expiration date *before* applying any PTA (akin to a PTE), double patenting still would be appropriate here because two patents that are obvious variants and expire on the same day still need a terminal disclaimer to enforce common ownership. Second, the result here is not inequitable because the Federal Circuit has said the existence of any extra term of a second patent is itself what is inequitable, and Appellant still enjoyed the entire term of the earliest patent. Third, double patenting is a substantial new question because, regardless of what should have happened in the original prosecution, there is insufficient evidence that the original examiner actually considered double patenting.

*Standard of Review*

The PTO is "authorized during reexamination to consider the question of double patenting." *In re Lonardo*, 119 F.3d 960, 966 (Fed. Cir. 1997); *see also* MPEP § 2258(I)(D). "As with statutory obviousness under 35 U.S.C. § 103, obviousness-type double patenting is an issue of law premised on underlying factual inquiries." *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d 1368, 1376 (Fed. Cir. 2012).

*Legal Background*
*on Obviousness-Type Double Patenting, Terminal Disclaimers, PTA, & PTE*

Obviousness-type double patenting is a "judicially created" doctrine that "prohibits an inventor from obtaining a second patent for claims that are not patentably distinct from the claims of the first patent." *Lonardo*, 119 F.3d at 965. "There are two justifications for obviousness-type double

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

patenting": (1) "to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about" and (2) "to prevent multiple infringement suits by different assignees asserting essentially the same patented invention." *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) (quotation omitted). For example, if an inventor receives a second patent with claims that are merely obvious variants of a first patent, double patenting helps prevent the patentee from (1) suing on the second patent after the first has already expired (i.e., improper time-wise extension) or (2) selling the two patents to different entities only to have both entities separately sue an alleged infringer on two obvious variants of each other (i.e., improper harassment by multiple assignees).

A patentee or applicant often can overcome double patenting by filing a terminal disclaimer. *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1346 (Fed. Cir. 2010). Terminal disclaimers are expressly permitted by statute to "disclaim or dedicate to the public . . . any terminal part of the term" of a patent. 35 U.S.C. § 253(b). The USPTO has provided regulations on what a terminal disclaimer must contain to be effective. *E.g.*, 37 C.F.R. § 1.321. A terminal disclaimer solves the two concerns of double patenting by (1) making the *later* patent expire with the *earlier* patent and (2) rendering the second patent unenforceable if it is not commonly owned with the first patent. *E.g.*, 37 C.F.R. § 1.321(b)(2), (c)(3), (d)(3); MPEP §§ 804.02(VI), 1490(VI)(A), (IX). However, "a terminal disclaimer filed after the expiration of the earlier patent over which claims have been found obvious cannot cure obviousness-type double patenting." *Boehringer*, 592 F.3d at 1347–48. Thus, a terminal disclaimer cannot cure any double patenting rejection against the expired patents here. Appeal Br. 19.

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

For two issued patents, double patenting and the need for a terminal disclaimer generally only apply to the *later* patent.[3] *See Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 & n.5 (Fed. Cir. 2001) ("A *later* claim that is not patentably distinct from an earlier claim in a commonly owned patent is invalid for obvious-type double patenting."; "A patent owner cannot avoid double patenting by disclaiming the *earlier* patent." (emphases added)). The question then is how to determine which patent is "later." The answer depends on whether the patents issued from applications filed on or after June 8, 1995. This date is six months after enactment of the Uruguay Round Agreements Act ("URAA"), which changed the term of a patent from (A) 17 years after issue to (B) 20 years from the earliest filing date of any non-provisional U.S. application to which that patent claims priority. 35 U.S.C. § 154.

For two post-URAA patents, the "later" patent generally is determined by looking at the *expiration* date. *Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1362–63, 1366 (Fed. Cir. 2018). For two pre-URAA patents or certain scenarios involving one patent on each side of the URAA date, the "later" patent is instead determined by looking at the *issue* date. *Id.* at 1362 ("Traditionally, courts looked at the issuance dates of the respective patents, because, under the law pre-URAA, the expiration date of the patent was inextricably intertwined with the issuance date, and used the earlier-issued patent to limit the patent term(s) of the later issued patent(s)."). Prior to the URAA, a patent expired 17 years after issuance, so

---

[3] For two co-pending applications, a provisional double patenting rejection against both applications may be appropriate if it is not yet known which will result in the later patent. *See* MPEP § 804(I)(1).

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

"looking to patent issue dates had previously served as a reliable stand-in for the date that really mattered—patent expiration." *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1215 (Fed. Cir. 2014). Finally, if two post-URAA patents expire on the same day or two pre-URAA patents have the same issue date, then the patent with the higher patent number may be invalid for double patenting.[4] *See Underwood v. Gerber*, 149 U.S. 224 (1893) (affirming Patent No. 348,073 was void over the same inventors' Patent No. 348,072 when both patents had the same filing date, issue date, and expiration date).

A complication arises, however, in that Congress also provided two ways to potentially prolong the term of a patent. A patent term adjustment ("PTA") under § 154(b) may adjust the term based on certain delays by the USPTO during prosecution, and a patent term extension ("PTE") under § 156 may extend the term based on certain regulatory delays, such as the FDA reviewing a new drug. 35 U.S.C. §§ 154(b), 156. The question before us now is how a PTA under § 154 should factor into the double patenting analysis, such as whether double patenting should be based on the expiration date *before* a PTA or *after*. The Federal Circuit already addressed similar questions for a PTE, yet it did so by contrasting the statutes for PTE (§ 156) versus PTA (§ 154). We discuss these cases below.

---

[4] As the patents here issued on different dates, we need not resolve whether an analysis for patents issued on the same day should first look to priority date or filing date rather than patent number (e.g., two pre-URAA patents with the same issue date but the patent with the higher patent number has a significantly earlier filing date and priority date).

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

### PTE & Terminal Disclaimers
### (Merck v. Hi-Tech)

For a PTE under § 156, the starting point is *Merck & Co. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317 (Fed. Cir. 2007). In that case, the patent owner had already filed a terminal disclaimer to overcome an obviousness-type double patenting rejection. 482 F.3d at 1318–19. Later, the patent was awarded a PTE under § 156. *Id.* at 1319. The question before the court was whether a PTE under § 156 could be applied to a patent subject to a terminal disclaimer. *Id.* at 1324. The court held "a patent term extension under § 156 is not foreclosed by a terminal disclaimer." *Id.* at 1322. In particular, "[t]he computation of a Hatch–Waxman patent term extension is from the expiration date resulting from the terminal disclaimer and not from the date the patent would have expired in the absence of the terminal disclaimer." *Id.* at 1322–23. Put another way, a PTE under § 156 is applied *after* any terminal disclaimer.

The Federal Circuit reached this conclusion by contrasting PTE with PTA. For a PTA, "§ 154(b)(2)(B) expressly excludes patents in which a terminal disclaimer was filed from the benefit of a term adjustment for PTO delays." *Merck v. Hi-Tech*, 482 F.3d at 1322. Specifically, the statute states that "[n]o patent the term of which has been disclaimed beyond a specified date may be adjusted under this section beyond the expiration date specified in the disclaimer." 35 U.S.C. § 154(b)(2)(B). The Federal Circuit explained that "[t]here is no similar provision that excludes patents in which a terminal disclaimer was filed from the benefits of Hatch-Waxman extensions" under § 156. *Merck v. Hi-Tech*, 482 F.3d at 1322. Thus, a terminal disclaimer is applied *before* a PTE *because* PTE is different than PTA.

9

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

*PTE & Double Patenting*
*(Novartis v. Ezra)*

The next question was how a PTE applied to double patenting in the absence of a terminal disclaimer. As noted above, a terminal disclaimer generally is filed to overcome obviousness-type double patenting. *In re Van Ornum*, 686 F.2d 937, 948 (CCPA 1982); 37 C.F.R. § 1.321(c), (d); MPEP § 1490(II). Given this relationship between double patenting and terminal disclaimers and given the holding in *Merck v. Hi-Tech* that a terminal disclaimer applies *before* a PTE, the Federal Circuit not surprisingly held "as a logical extension of our holding in *Merck & Co. v. Hi-Tech*" that double patenting also should be considered *before* a PTE. *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367, 1373–74 (Fed. Cir. 2018). Thus, "if a patent, under its original expiration date without a PTE, should have been (but was not) terminally disclaimed because of obviousness-type double patenting, then this court's obviousness-type double patenting case law would apply, and the patent could be invalidated." *Id.* at 1374. "However, if a patent, under its pre-PTE expiration date, is valid under all other provisions of law, then it is entitled to the full term of its PTE." *Id.*

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

A timeline for the patents in *Novartis v. Ezra* is reproduced below:



*Novartis v. Ezra*, 909 F.3d at 1370.  As shown in the timeline above, the challenged patent (the '229 patent) had an *earlier* filing date, issue date, and pre-PTE expiration date than the reference patent (the '565 patent).  Because the challenged patent was the *earlier* patent (at least pre-PTE), the challenged patent was not invalid for double patenting.  *Id.* at 1373–75.

## PTA & Double Patenting

The question now before us is how a PTA affects double patenting. Appellant relies on one broadly worded sentence in *Novartis v. Ezra* to argue that "a judge-made doctrine" (i.e., obviousness-type double patenting) cannot "cut off a statutorily-authorized time extension."  Appeal Br. 11 (quoting *Novartis v. Ezra*, 909 F.3d at 1375).  Although the holding in *Novartis v. Ezra* was about a PTE under § 156, Appellant extends that argument to suggest that any PTA under § 154 also is a "statutory grant of additional term" that "cannot be deemed improper."  *Id.* at 12.

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

Appellant's argument is not persuasive because it ignores the plain text of § 154 and the actual holding in *Novartis v. Ezra*.

First, contrary to Appellant's assertions, the decision in *Novartis v. Ezra* reaffirms that a double patenting analysis *should* be done even if a patent has a PTE. The real question was whether double patenting should be considered *before* or *after* a PTE, with the court ultimately deciding double patenting should be considered *before* a PTE. *Novartis v. Ezra*, 909 F.3d at 1374 ("if a patent, under its original expiration date without a PTE, should have been (but was not) terminally disclaimed because of obviousness-type double patenting, then this court's obviousness-type double patenting case law would apply, and the patent could be invalidated"). So here, we must do a double patenting analysis and the question is whether double patenting should be considered with the expiration dates *before* or *after* a PTA.

Second, the outcome for a PTE under § 156 in *Merck v. Hi-Tech* was based on the difference between § 156 and § 154. In particular, "§ 154(b)(2)(B) expressly excludes patents in which a terminal disclaimer was filed from the benefit of a term adjustment for PTO delays," but there is an "absence of any such prohibition regarding Hatch–Waxman extensions" under § 156. *Merck v. Hi-Tech*, 482 F.3d at 1322. That reasoning in *Merck v. Hi-Tech* was important enough that when summarizing the prior case, *Novartis v. Ezra* repeated the prior case's "contrast between § 156 for PTE with the language of § 154 for patent term adjustments." *Novartis v. Ezra*, 909 F.3d at 1373–74. Thus, the rule in *Merck v. Hi-Tech* and *Novartis v. Ezra* for when to apply a PTE does not apply to a PTA because those decisions were premised on the contrast between PTE and PTA.

12

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

Third, the statutory language in § 154 is clear that any terminal disclaimer should be applied *after* any PTA (i.e., a PTA cannot adjust a term beyond the expiration date in any disclaimer). 35 U.S.C. § 154(b)(2)(B) ("No patent the term of which has been disclaimed beyond a specified date may be adjusted under this section beyond the expiration date specified in the disclaimer."). Although Appellant asserts that the statute says the term "shall" be extended (Reply Br. 8), Appellant omits that all of those sentences are prefaced with the phrase "Subject to the limitations under paragraph (2)," which includes the limitations due to terminal disclaimers. *Id.* § 154(b)(1)(A), (B), (C). Thus, as recognized by *Merck v. Hi-Tech* and *Novartis v. Ezra*, the statute itself is clear that unlike a PTE under § 156, a PTA under § 154 shall *not* extend the term of a patent past the date of any terminal disclaimer.

Fourth, given that terminal disclaimers arise almost exclusively to overcome obviousness-type double patenting, Congress expressly addressing terminal disclaimers in § 154 is tantamount to addressing obviousness-type double patenting. *See Van Ornum*, 686 F.2d at 948; 37 C.F.R. § 1.321(c), (d); MPEP § 1490(II). Indeed, *Novartis v. Ezra* itself recognized that a rule for terminal disclaimers (from *Merck v. Hi-Tech*) should also apply to obviousness-type double patenting as "a logical extension." 909 F.3d at 1373. The *Novartis v. Ezra* court rejected the argument "that the *Merck* court's rationale only spoke to the impact of a new PTE on preexisting terminal disclaimers," instead finding that the prior "holding on the validity of a PTE for a patent that was terminally disclaimed *in order to overcome an obviousness-type double patenting rejection* is directly relevant to the instant case." *Id.* at 1374 (quotation omitted). Obviousness-type double patenting

13

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

and terminal disclaimers are two sides of the same coin: the problem and the solution. Just as *Novartis v. Ezra* found a rule on terminal disclaimers was "directly relevant" to double patenting and therefore applied that rule to double patenting as "a logical extension," so too we hold that the statutory rule for terminal disclaimers in § 154 is directly relevant to double patenting and we apply that same rule to double patenting as a logical extension.

Indeed, in at least one related reexamination, Appellant itself argues that double patenting should be applied to post-PTA dates. *Compare* Appeal 2021-005302, Appeal Br. 7 ("the '369 Patent . . . and '626 Patent . . . have the same expiration date except for statutorily-authorized PTA"), *with id.* at 10 n.1 ("the '626 Patent cannot be used as an obviousness-type double patenting reference because the '626 Patent expired after the '369 Patent").

Finally, the Federal Circuit also previously said that "another crucial purpose of the doctrine" of double patenting was "to prevent an inventor from securing a second, later expiring patent" for "[p]atents . . . filed at the same time" that "have different patent terms due to examination delays at the PTO" under "§ 154(b) (patent term adjustments)." *AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1373 (Fed. Cir. 2014); *see also In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009) ("In some cases there may still be the possibility of an unjust time-wise extension of a patent arising from patent term adjustment under § 154 or patent term extension under § 156."). That is precisely the scenario we have here where two patents have the same effective filing date but expire at different times due solely to PTAs.

Appellant provides no plausible reason for ignoring the clear statutory text and the contrast between § 154 and § 156 that formed the basis of *Merck*

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

*v. Hi-Tech* and *Novartis v. Ezra*.  Nor has Appellant provided any reason for applying the *post*-PTA date for terminal disclaimers yet the *pre*-PTA date for double patenting.[5]  We therefore hold that both obviousness-type double patenting and terminal disclaimers should be considered *after* any PTA.[6]

*The District Court Decision in Mitsubishi Is Not Persuasive*

Appellant also cites a district court decision in *Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.*, No. 3:17-cv-05319, __ F. Supp. 3d __, 2021 WL 1845499, at *27–30 (D.N.J. Mar. 22, 2021).  Appeal Br. 13–17.  We do not find Appellant's citation to *Mitsubishi* persuasive.  *See also* Ans. 8.

First, an earlier district court decision in the Western District of Michigan came out the opposite way from *Mitsubishi*.  *Magna Elecs., Inc. v. TRW Automotive Holdings Corp.*, No. 12-cv-654, 2015 WL 11430786 (W.D. Mich. Dec. 10, 2015).  Although the *Magna Electronics* case appears to have settled prior to any appeal, we understand that the decision in *Mitsubishi* is currently on appeal to the Federal Circuit (No. 21-1876; filed Apr. 23, 2021).

---

[5] Applying different dates for double patenting versus terminal disclaimers also creates inconsistent results.  For example, suppose the pre-PTA expiration date of Patent A is 1 day after Patent B.  Therefore, Patent B could be used as a double patenting reference (pre-PTA) against Patent A, and a terminal disclaimer (post-PTA) would wipe out *all* PTA on Patent A.  However, Patent A could *not* be used as a double patenting reference (pre-PTA) against Patent B, so Patent B could have an unlimited amount of PTA, even long after the expiration of Patent A.

[6] 35 U.S.C. § 154(b)(3)(A) gives the Director some discretion "establishing procedures for the application for and determination of patent term adjustments."  Because we decide the case based on the reasoning above, we need not decide whether that discretion includes the PTA issues here.

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

Second, the *Mitsubishi* district court never addressed that double patenting applies even to two patents that have the same filing date, the same issue date, and the same expiration date. *Underwood*, 149 U.S. 224. For example, a terminal disclaimer is still needed to ensure that two patents remain commonly owned. *See Sandy MacGregor Co. v. Vaco Grip Co.*, 2 F.2d 655, 657 (6th Cir. 1924) ("in *Underwood v. Gerber* it was thought that the splitting up of one indivisible right into two and subjecting the infringer to suits by two different owners of the right infringed justified applying the defense of double patenting as against two patents issued on the same day"); *Van Ornum*, 686 F.2d at 945 (similarly summarizing *Underwood*).

Third, the district court's entire discussion of the difference between § 154 and § 156 is relegated to a single footnote in which the court does not appear to have understood that a terminal disclaimer is the standard way to cure double patenting, thereby overlooking why the Federal Circuit decided a rule for terminal disclaimers (*Merck v. Hi-Tech*) should also apply to a double patenting analysis (*Novartis v. Ezra*) as a "logical extension." *See Mitsubishi*, 2021 WL 1845499, at *29 n.45.

Fourth, even within the same paragraph, the district court confuses when the challenged patent would have expired relative to the reference patent. *Compare Mitsubishi*, 2021 WL 1845499, at *29 ("absent the PTA granted to the '788 Patent, both the '788 Patent and the '219 Patent would have the same expiration date"), *with id.* ("but for the § 154(b) PTA, the '788 Patent would have expired before the '219 Patent"). So it is not clear whether the district court was even considering the right facts.

Finally, in *Mitsubishi*, the challenged patent issued *before* the reference patent (May 17, 2011 vs. July 17, 2012). 2021 WL 1845499, at

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

*27–28.  That is opposite the present case where the challenged patent
issued *after* the reference patent.  Thus, even if we treated a PTA like PTE
and double patenting were considered *before* a PTA, the outcome here still
would be the opposite of *Mitsubishi* because the challenged patent in
*Mitsubishi* was the *earlier* patent whereas the challenged patent here is the
*later* patent.

  For these reasons, we give little weight to the *Mitsubishi* decision.

  *Double Patenting Here Was Proper Regardless When the PTA Is Applied*

  As discussed above, we hold that double patenting should be
considered *after* any PTA is applied.  Here, after applying the PTA, the
challenged patent expired after the reference patent (PTA of 726 days vs. 45
days).  Appeal Br. 10.  Thus, the later-expiring claims of the challenged
patent were properly rejected for obviousness-type double patenting over the
earlier-expiring claims of the reference patent.

  However, even if we treated a PTA like PTE and did a double
patenting analysis *before* factoring in any PTA, a double patenting rejection
still would be proper here because prior to the PTA, the challenged patent
and the reference patent would have expired on the same day (Oct. 6, 2017).
*Underwood*, 149 U.S. 224 (affirming a second patent as void when both
patents had the same filing date, issue date, and expiration date); *see also*
MPEP § 804(I)(B)(1)(b)(ii) ("If both applications are actually filed on the
same day, or are entitled to the same earliest effective filing date[,] . . . the
provisional nonstatutory double patenting rejection made in each application
should be maintained until the rejection is overcome," such as by "filing a
terminal disclaimer in the pending application."); Ans. 8 ("ODP is

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

appropriate to be considered and addressed in reexamination, regardless whether two relevant patents have different expiration[] dates"). Here, the challenged patent is a later-issued patent claiming obvious variants of the earlier-issued reference patent. Even with the same expiration date, double patenting and a terminal disclaimer are still needed to ensure that the later-issued obvious variant retains common ownership with the earlier-issued patent. This is necessary to accomplish double patenting's second goal "to prevent multiple infringement suits by different assignees asserting essentially the same patented invention." *Hubbell*, 709 F.3d at 1145; *see also Sandy MacGregor*, 2 F.2d at 657 ("in *Underwood v. Gerber* it was thought that the splitting up of one indivisible right into two and subjecting the infringer to suits by two different owners of the right infringed justified applying the defense of double patenting as against two patents issued on the same day"); *see also Van Ornum*, 686 F.2d at 945 (similarly summarizing *Underwood*). Appellant never addresses that double patenting applies to patents with the same expiration date.

　　　Appellant does argue that "there has been no harassment by multiple assignees" because the patents have been commonly owned so far and the patents are now expired. Appeal Br. 12. But the statutory time limitation for past damages is "six years prior to the filing of the complaint." 35 U.S.C. § 286. The patents here expired less than six years ago, so the risk still remains for multiple assignees to seek past damages. Indeed, Appellant has already filed one lawsuit after both patents expired. Appeal Br. 2.

　　　Appellant further argues that the patents "will be maintained by the same owner." Appeal Br. 12. The only basis for this assertion is a single paragraph from a declaration of one inventor:

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

> Because of the exclusive (field-of-use) nature of certain license
> agreements, MIS/Cellect may not freely assign these patents and
> they have been, and will continue to be, owned by MIS/Cellect.
> As the Chief Technology Officer and Co-Founder of Micro
> Imaging Solutions LLC, I can confirm that MIS/Cellect will not
> sell off or split apart any portion of the patents that comprise the
> '742 Patent family to a third-party.

Adair Decl. ¶ 24 (Sept. 28, 2020). But such a declaration is unpersuasive.

For example, suppose Appellant went out of business and a bankruptcy court

(not Appellant itself) split the patents among various creditors. Even if

Appellant's licensees might have a breach-of-contract claim against the new

patent owners, a third party sued by the multiple new owners has no way to

enforce the inventor's declaration absent double patenting.

There also is no need to wait until *actual* harassment by multiple

assignees. *See* Appeal Br. 9 ("this judicially created doctrine requires . . .

harassment by multiple assignees"). One goal of double patenting and

terminal disclaimers is to preemptively prevent the risk of such harassment:

> Even though both patents are issued to the same patentee or
> assignee, it (is) possible that ownership of the two will be divided
> by later transfers and assignments. The possibility of multiple
> suits against an infringer by assignees of related patents has long
> been recognized as one of the concerns behind the doctrine of
> double patenting.

*Van Ornum*, 686 F.2d at 944 (quoting Chisum on Patents § 9.04(2)(b)

(1981)); *see also* Ans. 4.

In sum, the double patenting rejection of the later-issued claims here

was proper regardless of whether (A) the PTA is applied before the double

patenting analysis (because the challenged patent's post-PTA expiration date

is after that of the reference patent) or (B) the PTA is applied after the

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

double patenting analysis (because despite the pre-PTA expiration dates being the same, the challenged patent is a later-issuing obvious variant still at risk for harassment by multiple assignees).

*Substantial New Question*

Appellant argues there is no substantial new question of patentability because the examiner in the original prosecution was aware of both applications and "conducted an interference search" for both, so the examiner "would have" made a double patenting rejection "if [the examiner] believed that such a rejection was warranted." Appeal Br. 20–21, 9–10.

We are not persuaded by Appellant's arguments. A substantial new question of patentability does exist here because there is insufficient evidence that double patenting actually was considered during the original prosecution. Regardless of what ideally should have happened during the original prosecution, the reexamination process exists because items sometimes get overlooked or errors are made. *See, e.g.*, *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir. 1985) ("The reexamination statute's purpose is to correct errors made by the government . . . and if need be to remove patents that should never have been granted."), *on reh'g*, 771 F.2d 480, 481 (Fed. Cir. 1985) (denying the petition in relevant part).

The Examiner also determines that the PTA itself provided a "new light" for a substantial new question of patentability as the amount of PTA, if any, was not known during prosecution. Ans. 4, 9. In the specific circumstances here, we agree. Generally, a patent term adjustment calculation is performed after the notice of allowance and "the patent term adjustment indicated on the patent is the 'official' notification of the Office's

patent term adjustment determination." MPEP § 2733. Thus, at the time of a notice of allowance, an examiner does not necessarily know whether the resulting patent will receive any PTA or if so how much. Here, the reference patent had already issued in 2002 and been granted 45 days of PTA, whereas the challenged patent did not issue or receive any PTA until 2006. So from 2002 and 2006 (i.e., for most of the prosecution of the application that would result in the challenged patent), the reference patent expired *after* the expected expiration date for the challenged patent (which did not yet have any PTA), not *before* it.

## Equity

Appellant argues that "an equitable doctrine should not be applied in a manner that would be inequitable" given that "filing a terminal disclaimer now is not possible as the patents are expired" and "the record is completely devoid" of any "gamesmanship" or "unjustified or improper timewise extension." Appeal Br. 19–20 (quotation omitted).

However, the Federal Circuit is unambiguous that the inequity here is Appellant's enjoyment of a second patent's term beyond the expiration of the first patent:

> When the claims of a patent are obvious in light of the claims of an earlier commonly owned patent, the patentee can have no right to exclude others from practicing the invention encompassed by the later patent after the date of the expiration of the earlier patent. But when a patentee does not terminally disclaim the later patent before the expiration of the earlier related patent, the later patent purports to remain in force even after the date on which the patentee no longer has any right to exclude others from practicing the claimed subject matter. By permitting the later patent to remain in force beyond the date of the earlier patent's expiration, the patentee wrongly purports to

21

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

> inform the public that it is precluded from making, using, selling, offering for sale, or importing the claimed invention during a period after the expiration of the earlier patent.
>
> By failing to terminally disclaim a later patent prior to the expiration of an earlier related patent, a patentee enjoys an unjustified advantage—a purported time extension of the right to exclude from the date of the expiration of the earlier patent. The patentee cannot undo this unjustified timewise extension by retroactively disclaiming the term of the later patent because it has *already* enjoyed rights that it seeks to disclaim.

*Boehringer*, 592 F.3d at 1347–48 (citations omitted); *see also Lonardo*, 119 F.3d at 965. Appellant also never addresses preserving the public's right to make what is covered by the *earlier* patent after it expired:

> The bar against double patenting was created to preserve that bargained-for right held by the public. *See, e.g., Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 197–98, 202 (1894); . . . *Odiorne v. Amesbury Nail Factory*, 18 F.Cas. 578, 579 (C.C.D.Mass.1819). If an inventor could obtain several sequential patents on the same invention, he could retain for himself the exclusive right to exclude or control the public's right to use the patented invention far beyond the term awarded to him under the patent laws. As Justice Story explained in 1819, "[i]t cannot be" that a patentee can obtain two patents in sequence "substantially for the same invention[] and improvements"; "it would completely destroy the whole consideration derived by the public for the grant of the patent, viz. the right to use the invention at the expiration of the term." *Odiorne*, 18 F.Cas. at 579. Thus, the doctrine of double patenting was primarily designed to prevent such harm by limiting a patentee to one patent term per invention or improvement.

*Gilead*, 753 F.3d at 1212 (parallel citations omitted).

Even beyond the mere existence of the extra term, Appellant concedes that it actively filed at least one lawsuit on the challenged patent after its

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

expiration, yet Appellant fails to address whether that lawsuit seeks damages for the extra term of the challenged patent.  *See* Appeal Br. 2.

Moreover, invalidating the challenged claims of a *second* patent (or third, fourth, and fifth patents in the case of the numerous related reexaminations here) does not take away Appellant's right to enforce its *first* patent.

Thus, Appellant fails to persuade us that the result here is inequitable.

*Conclusion*

Appellant argues both double patenting rejections collectively with no separate arguments based on Harris.  Accordingly, we sustain the double patenting rejections of claims 22, 42, 58, and 66.

OUTCOME

The following table summarizes the outcome of the rejection:

| Claim(s) Rejected | 35 U.S.C. § | Reference(s)/Basis | Affirmed | Reversed |
|---|---|---|---|---|
| 22, 42, 58, 66 | | Double patenting: '369 patent | 22, 42, 58, 66 | |
| 22, 42, 58, 66 | | Double patenting: '369 patent and Harris | 22, 42, 58, 66 | |
| Overall Outcome | | | 22, 42, 58, 66 | |

TIME TO RESPOND

Requests for extensions of time in this *ex parte* reexamination proceeding are governed by 37 C.F.R. § 1.550(c).  *See* 37 C.F.R. § 41.50(f).

AFFIRMED

23

Appeal 2021-005303
Reexamination Control 90/014,453
Patent 6,982,742 B2

cc Third Party Requester:

ROPES & GRAY LLP
IPRM DOCKETING - FLOOR 43 PRUDENTIAL TOWER, 800
BOYLSTON STREET, BOSTON, MA 02199-3600