Nos. 22-1293, -1294, -1295, -1296

# United States Court of Appeals
# For the Federal Circuit

IN RE: CELLECT LLC,

*APPELLANT*

BRIEF FOR *AMICUS CURIAE*
INTELLECTUAL PROPERTY OWNERS ASSOCIATION
IN SUPPORT OF NEITHER PARTY URGING REVERSAL

HENRY HADAD
*Chair, Amicus Brief Committee*
INTELLECTUAL PROPERTY
OWNERS ASSOCIATION
1501 M St. N.W., Suite 1150
Washington, D.C. 20005
(202) 507-4500

PAUL H. BERGHOFF
*Counsel of Record*
MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913–0001

*Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1293, -1294, -1295, -1296

**Short Case Caption** IN RE: CELLECT LLC

**Filing Party/Entity** Intellectual Property Owners Association

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/23/2022 Signature: Paul H. Berghoff

Name: Paul H. Berghoff

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Intellectual Property Owners Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

## Contents

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTEREST OF THE *AMICUS CURIAE* ........ 1

SUMMARY OF THE ARGUMENT ........ 2

ARGUMENT ........ 4

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

## CASES

*Ex parte* Cellect LLC,
No. 2021-005046 (P.T.A.B. Dec. 1, 2021) ....................2

*Ex parte* Cellect LLC,
No. 2021-005258 (P.T.A.B. Dec. 1, 2021) ....................2

*Ex parte* Cellect LLC,
No. 2021-005302 (P.T.A.B. Dec. 1, 2021) ....................2

*Ex parte* Cellect LLC,
No. 2021-005303 (P.T.A.B. Dec. 1, 2021) ....................2

*In re Berg*,
140 F.3d 1428 (Fed. Cir. 1998) .................... 3-4

*Novartis v. Ezra*,
909 F.3d 1367 (Fed. Cir. 2018) ....................5

*Procter & Gamble v. Teva*
(Fed. Cir. 2009) ....................6

## STATUTES

35 U.S.C. § 120 .................... 6-7

35 U.S.C. § 154(b) .................... *passim*

## INTEREST OF THE *AMICUS CURIAE*

*Amicus curiae* Intellectual Property Owners Association (IPO)[1] represents some of the most innovative companies in the United States. IPO's more than 125 corporate members and their subsidiaries develop, manufacture, and sell technology-based products in a wide range of industries, including electronics, pharmaceuticals, software, and biotechnology. IPO is committed to serving the interests of all intellectual property owners in all industries and all fields of technology.[2]

IPO's corporate members invest tens of billions of dollars annually in research and development and employ hundreds of thousands of scientists, engineers, and others in the United States to develop, produce, and market innovative products and services. To protect their inventions, IPO's members collectively hold tens of thousands of U.S. patents and account for a substantial portion of the patent applications filed every year at the United States Patent and Trademark Office (USPTO).

---

[1] No counsel for a party authored this brief in whole or in part, and no counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. The parties have consented to the filing of this brief.

[2] IPO procedures require approval of positions in amicus briefs by a two-thirds majority of directors present and voting. The members of IPO's Board of Directors are listed in the Appendix.

Because of the major investment of its members in innovation and the need to protect that investment through patents, this case presents a question of substantial practical importance to IPO: namely, whether the expansion of the doctrine of obviousness-type double patenting (OTDP), as articulated by the Patent Trial and Appeal Board (PTAB) in *Ex parte Cellect LLC* Appeal Nos. 2021-005046, -005258, -005302, -005303 (P.T.A.B. Dec. 1, 2021), is consistent or inconsistent with the statutory language establishing patent term adjustment (PTA) in 35 U.S.C. § 154. IPO believes it is inconsistent. Because patent term adjustment and the validity of patents that have their terms adjusted according to the patent statute are important to all patent owners, IPO respectfully files this brief and requests that this Court reverse or vacate the PTAB's interpretation of the law regarding the interplay of OTDP and PTA.[3]

## SUMMARY OF THE ARGUMENT

Section 154(b) of the Patent Act states that "the term of the patent shall be extended" "if the issue of an original patent is delayed due to the failure of the Patent and Trademark Office" to perform various acts within designated time periods. 35 U.S.C. § 154(b)(1)(A). The term extension of Section 154(b) is obligatory, not permissive ("shall" not "may").

[3] IPO takes no position on any other aspects of the PTAB's decisions, including the ultimate validity of Cellect's patents.

At issue are four patents owned by Cellect LLC, each of which had been granted a PTA under Section 154. Each of these four patents was rejected during *ex parte* reexamination on the basis of OTDP. Previously issued Cellect patents were used as the basis of the OTDP rejections, all of which claimed the same effective filing date as the rejected patents. Therefore, but for the patent term adjustments, all of these patents would otherwise have had the identical expiration date. But because the previously issued Cellect patents had not had their terms adjusted due to PTO delay (or had received a shorter adjustment period), their terms ended before the terms of the rejected patents, all of which were given the benefit of a PTA. The PTAB affirmed all four rejections.

The bottom line is that all four rejected Cellect patents were invalidated because of Patent Office delays during the original examination period. That is the exact opposite of the result Congress intended by enacting 35 U.S.C. § 154. Patent Office delay should *add* to the term of the patent whose examination was delayed, not invalidate it, essentially reducing its term to zero.

IPO believes that the extension of a patent's term based on a Patent Term Adjustment (PTA) under Section 154(b) should not, as a matter of law, invalidate the claims of that patent based on OTDP. Obviousness-type double patenting (OTDP) is a "judge-made" doctrine that is intended to prevent the improper extension of the term of a patent. *In re Berg*, 140 F.3d 1428, 1431–32 (Fed. Cir.

1998). Here, there was no improper extension of term, quite the opposite. Therefore, IPO respectfully requests that this Court vacate or reverse the PTAB's holdings in this regard as a matter of law.

## ARGUMENT

The issue on appeal is whether the Board improperly expanded the "judge-made" doctrine of OTDP by invalidating four Cellect patents during reexamination because of PTA awarded during their original prosecution. The Patent Act states that "if the issue of an original patent is delayed due to the failure of the Patent and Trademark Office ... the term of the patent *shall be extended*." 35 U.S.C. § 154(b)(1)(A) (emphasis added). Such patent term adjustments (PTAs) are premised on the recognition by Congress that delays at the Patent Office can unfairly limit the term of a patent because patent term is measured from the date on which the earliest relevant application is filed.

IPO believes that the Board's expansion of the "judge-made" doctrine of OTDP is incorrect and should be reversed or vacated. The statute is clear. When the USPTO delays the issuance of a patent as defined in the statute, "the term of the patent *shall* be extended." 35 U.S.C. § 154(b)(1)(A)(iv) (emphasis added). Yet the Board's rulings do exactly the opposite. According to the PTAB, the Patent Office's award of additional adjusted term to the applicant under Section 154 not only nullifies the additional patent term just awarded, it invalidates the

entire patent. Congress intended that Patent Office delay would *add* term, not take away all term. The PTAB's analysis actually punishes the patent owner for receiving a statutorily mandated PTA.

Section 154 does refer to terminal disclaimers, but the PTAB misinterprets this language. The statute states: "No patent the term of which has been disclaimed beyond a specified date may be adjusted under this section beyond the expiration date specified in the disclaimer." 35 U.S.C. § 154(B)(2)(B). The meaning of this language is clear. If a patent has been the subject of a terminal disclaimer, no PTA is available, regardless of what Patent Office delays may have occurred. But in the patents involved in this appeal, no terminal disclaimers were ever requested by the Patent Office or filed by the patent owner, so this statutory language does not apply. And what is equally clear is that this statutory language does not literally or logically support the conclusion reached by the PTAB, i.e., that OTDP somehow always trumps a properly awarded PTA.

The Board's decision in affirming the Examiner's rejections is also inconsistent with this Court's holding in *Novartis*. While *Novartis* addressed PTEs, rather than PTAs, PTEs are closely analogous. PTEs are based on the FDA's delay in approving applications to market pharmaceuticals. Notably, in both scenarios, the additional patent term is due to the delay of an administrative agency. The term adjustment or extension is not the result of any delay, mistake,

or gamesmanship on the part of the patentee. As such, the patentee should not be penalized for the extra term afforded under the PTA statute, just as a patentee is not penalized for the extra term afforded under the PTE statute.

The PTAB's holdings regarding these four patents is also inconsistent with the policy underpinning OTDP. OTDP is a "judge-created" doctrine that prevents a patent owner from "extending his exclusive rights to an invention through claims in a *later-filed* patent that are not patentably distinct from claims in the *earlier filed patent*." *Procter & Gamble v. Teva* (Fed. Cir. 2009) (emphasis added). But in this appeal, all of the patents (the rejected patents and the earlier patents that were the basis of the rejection) shared the *same* effective filing date. There was no attempt here to extend patent term based on a later-filed patent application. As such, the policy underlying OTDP is not implicated and should not have been used to nullify the clear statutory intent of Section 154.

IPO believes that if the Board's interpretation of the law were allowed to stand, potentially valuable patent rights would be unfairly lost. This would in turn tend to disincentivize investment in innovative research. The filing of continuation patent applications that claim the benefit of a common parent application has long been codified in the patent statute. 35 U.S.C § 120 states, in relevant part:

> An application for patent for an invention disclosed in the manner provided by section 112(a) (other than the requirement to disclose the best mode) in an application previously filed in the United States, or as provided by section 363 or 385, which names an

> inventor or joint inventor in the previously filed application **shall have the same effect, as to such invention, as though filed on the date of the prior application**, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. ….

(Emphasis added.) Patent owners have long relied on the ability to file multiple continuation applications to pursue claims of varying scope to protect their innovations. This is an important part of the U.S. patent system and there is nothing improper about it; it is explicitly permitted by the statute. The patent owner in this appeal did exactly what it was entitled to do -- file a series of applications all claiming the same effective filing date with claims of differing scope. But because the Patent Office delayed its examination of some of these applications to differing degrees, according to the PTAB's rationale, the applications in which the Patent Office delayed the most are invalid.

If allowed to stand, the Board's holdings would penalize applicants for being granted PTA because of Patent Office delay. This would present patentees who follow all the rules with a series of unfair Hobson's choices. Do applicants avoid filing multiple applications claiming the benefit of a common effective filing date, even though such applications are permitted by statute? Do applicants have to preemptively file terminal disclaimers in pending patent applications just in case one or more of their related applications are awarded PTAs? To force such choices

on patent applicants is unjustified and contrary to the express language of the patent statute. It would also undermine the ability of innovative companies to protect their inventions to the fullest extent permitted by law. It is bad policy.

The Board's assertion that "invalidating the challenged claims of a *second* patent" still affords patent owner's right to enforce its first patent misses the point. The Board's misapplication of the law disincentivizes applicants from filing continuing applications at all. Yet continuing applications are often necessary for applicants to cover the full scope of their inventions. Under the Board's decisions, pursuing additional patents stemming from the same disclosure via continuation applications will put granted, presumptively valid patents at risk of being invalidated in their entirety. There is no statutory, policy, or logical basis for this result.

If maintained, the Board's expansive and erroneous application of OTDP would be harmful to the patent system. The Board's holdings in this appeal introduce uncertainty and instability into continuing application practice. If allowed to stand, the Board's decisions would risk retroactive invalidation of many patents and potentially negatively affect every patentee who files multiple applications sharing the same priority date. The extension of a patent's term based on PTA should not, as a matter law, invalidate the claims of that patent based on

OTDP. For these reasons, IPO believes that the Board's interpretation of the law is incorrect and its decisions here should be reversed or vacated.

## CONCLUSION

IPO respectfully requests that this Court reverse or vacate the PTAB's application of obviousness-type double patenting to the adjustment of patent term under 35 U.S.C. § 154.

Respectfully submitted,

HENRY HADAD
*Chair, Amicus Brief Committee*
INTELLECTUAL PROPERTY
OWNERS ASSOCIATION
1501 M St. N.W., Suite 1150
Washington, D.C. 20005
(202) 507-4500

/S/ PAUL H. BERGHOFF
PAUL H. BERGHOFF
*Counsel of Record*
MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913–0001

# APPENDIX

## Members of the Board of Directors
## Intellectual Property Owners Association

Eric Aaronson
Pfizer Inc.

Steve Akerley
InterDigital Holdings, Inc.

Brett Alten
Hewlett Packard Enterprise

Ronald Antush
Nokia of Americas Corp.

Scott Barker
Micron Technology, Inc.

Thomas R. Beall
Corning Incorporated

Tyrome Brown
Dolby Laboratories

John J. Cheek
Tenneco Inc.

Karen Cochran
Shell Oil Company

Tonya Combs
Eli Lilly and Co.

Gwendolyn Dawson
Exxon Mobil Corp.

Buckmaster de Wolf
General Electric Co.

Robert DeBerardine
Johnson & Johnson

Anthony DiBartolomeo
SAP SE

Daniel Enebo
Cargill, Inc.

Matthew Fitzpatrick
Procter & Gamble Co.

Yen Florczak
3M Innovative Properties Co.

Louis Foreman
Enventys

Scott M. Frank
AT&T

Darryl P. Frickey
Dow Chemical Co.

Gary C. Ganzi
Evoqua Water Technologies, LLC

Robert Giles
Qualcomm Inc.

Krish Gupta
Dell Technologies

Henry Hadad
Bristol-Myers Squibb Co.

Lori Heinrichs
Boston Scientific

Thomas R. Kingsbury
Bridgestone Americas, Inc.

Laurie Kowalsky
Koninklijke Philips N.V.

William Krovatin
Merck & Co., Inc.

Michael C. Lee
Google Inc.

Elizabeth Lester
Equifax Inc.

Aseem Mehta
Bayer Intellectual Property GmbH

William Miller
General Mills, Inc.

Kelsey L. Milman
Caterpillar Inc.

Jeffrey Myers
Apple Inc.

Robin Nava
Schlumberger, Ltd.

Courtney Nelson Wills
Medtronic, Inc.

Christina Petersson
Ericsson

Troy Prince
Raytheon Technologies

KaRan Reed
BP America, Inc.

Matthew Sarboraria
Oracle USA Inc.

Manny Schecter
IBM Corp.

Derek Scott
Roche, Inc.

Jessica Sinnott
DuPont

Thomas Smith
GlaxoSmithKline

Daniel Staudt
Siemens Corp.

Gillian Thackray
Thermo Fisher Scientific Inc.

Phyllis Turner-Brim
HP Inc.

Stuart L. Watt
Amgen, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-1293, -1294, -1295, -1296

**Short Case Caption:** IN RE: CELLECT LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 2,287 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 05/23/2022 Signature: /s/ Paul H. Berghoff

Name: Paul H. Berghoff

Save for Filing