**Nos. 22-1293, 22-1294, 22-1295, 22-1296**

# United States Court of Appeals for the Federal Circuit

IN RE: CELLECT, LLC,
Appellant.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in *Ex Parte* Reexamination Control Nos. 90/014,453, 90/014,454, 90/014,455, 90/014,457

**BRIEF OF AMICI CURIAE SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC. IN SUPPORT OF THE DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE**

James L. Davis, Jr.
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone: (650) 617-4000

Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone: (212) 596-9000

Douglas Hallward-Driemeier
Scott A. McKeown
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Phone: (202) 508-4600

*Counsel for Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1293, -1294, 1295, -1296

**Short Case Caption** In re: Cellect, LLC

**Filing Party/Entity** Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/20/2022

Signature: /s/ Douglas H. Hallward-Driemeier

Name: Douglas H. Hallward-Driemeier

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Samsung Electronics Co., Ltd. | N/A | N/A |
| Samsung Electronics America, Inc. | N/A | Samsung Electronics Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Matthew Shapiro (Ropes & Gray LLP) | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Cellect LLC v. Samsung Electronics Co., Ltd. et al. | 1:19-cv-00438 | U.S. District Court - District of Colorado |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


Interest of Amici Curiae ........ 1

Summary of Argument ........ 2

Argument ........ 6

I. The Board Properly Affirmed the Rejection of the Challenged Claims for Obviousness-Type Double Patenting Because Cellect Failed to Terminally Disclaim Patentably-Indistinct Claims Among Patents Sharing a Common Inventor and Failed to Alert the Examiner, as Was Its Duty ........ 6

- A. Cellect's Failure to File Terminal Disclaimers Before Expiration of the Reference Patents Resulted in Unjustified Timewise Extensions of the Challenged Claims ........ 8
  - 1. Cellect Misinterprets the Plain Language of the PTA and PTE Statutes and this Court's Precedent ........ 13
  - 2. The Legislative History Contradicts Cellect's Attempts to Equate PTA and PTE ........ 16
  - 3. Considering Double Patenting After Application of the PTA Does Not Cut-off a Statutorily Authorized Timewise Extension ........ 20
- B. Cellect's Failure to File Terminal Disclaimers Before Expiration of the Reference Patents Also Resulted in a Risk of Harassment by Multiple Assignees of the Challenged and Reference Patents ........ 21

II. Invalidating Cellect's Claims for Obviousness-Type Double Patenting After Expiration of the Reference Patent Does Not Produce an Inequitable Result ........ 25

Conclusion ........ 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
764 F.3d 1366 (Fed. Cir. 2014) ....................*passim*

*Alaskan Arctic Gas Pipeline Co. v. U.S.*,
831 F.2d 1043 (Fed. Cir. 1987) ....................19

*Amgen, Inc. v. Sandoz Inc.*,
No. 18-11026 (MAS) (DEA), 2021 WL 5366800 (D.N.J. Sept. 20, 2021) ....................15, 16

*In re Berg*,
140 F.3d 1428 (Fed. Cir. 1998) ....................10

*Boehringer Ingelheim Int'l GmbH v. Barr Laboratories, Inc.*,
592 F.3d 1340 (Fed. Cir. 2010) ....................*passim*

*Dayco Prods., Inc. v. Total Containment, Inc.*,
329 F.3d 1358 (Fed. Cir. 2003) ....................24

*In re Fallaux*,
564 F.3d 1313 (Fed. Cir. 2009) ....................4, 10, 21

*Forest Grove Sch. Dist. v. T.A.*,
557 U.S. 230 (2009) ....................19

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
753 F.3d 1208 (Fed. Cir. 2014) ....................*passim*

*In re Goodman*,
11 F.3d 1046 (Fed. Cir. 1993) ....................10

*In re Griswold*,
365 F.2d 834 (C.C.P.A. 1966) ....................21, 22

*In re Hubbell*,
709 F.3d 1140 (Fed. Cir. 2013) ....................6, 21

*In re Jentoft*,
392 F.2d 633 (C.C.P.A. 1968) ........................................ 22, 23

*KangaROOS U.S.A., Inc. v. Caldor, Inc.*,
778 F.2d 1571 (Fed. Cir. 1985) ........................................ 24

*In re Lonardo*,
119 F.3d 960 (Fed. Cir. 1997) ........................................ 27

*Merck & Co. v. Hi-Tech Pharmacal Co.*,
482 F.3d 1317 (Fed. Cir. 2007) ........................................ *passim*

*Milner v. Dep't of the Navy*,
562 U.S. 562 (2011) ........................................ 19

*Mitsubishi Tanabe Pharma Corp. v. Sandoz Inc.*,
533 F. Supp. 3d 170 (D.N.J. 2021) ........................................ 15, 16

*Novartis AG v. Ezra Ventures LLC,*
909 F.3d 1367 (Fed. Cir. 2018) ........................................ *passim*

*Ortho Pharm. Corp. v. Smith*,
959 F.2d 936 (Fed. Cir. 1992) ........................................ 20

*In re Van Ornum*,
686 F.2d 937 (C.C.P.A. 1982) ........................................ *passim*

**Statutes**

35 U.S.C. § 101 ........................................ 2

35 U.S.C. § 154 ........................................ *passim*

35 U.S.C. § 156 ........................................ *passim*

35 U.S.C. § 253(b) ........................................ 6

**Other Authorities**

37 C.F.R. § 1.56 ........................................ 24

37 C.F.R. § 1.321 ........................................ 6, 20, 21, 22

H.R. Rep. No. 106-287, pt. 1 (1999) ........................................ 16, 17, 18

MPEP § 2001.06(b) (8th ed., 2001) ........................................................................24

*Patent Term Adjustment Statistics*, Patently-O (Nov. 20, 2016), https://patentlyo.com/patent/2016/11/patent-adjustment-statistics.html (last visited July 18, 2022) ............................................................8

## INTEREST OF AMICI CURIAE[1]

*Amici curiae* Samsung Electronics Co., Ltd. ("SEL") and its subsidiary Samsung Electronics America, Inc. ("SEA") (collectively "Samsung") respectfully submit this brief in support of the Director of the United States Patent and Trademark Office. All Parties have consented to the filing of this brief. SEL is one of the world's leading manufacturers of consumer electronic products, including mobile handsets, such as its flagship Galaxy phones and tablets. SEA sells various SEL products in the United States.

In 2019, Appellant Cellect, LLC ("Cellect") accused Samsung of infringing certain claims of U.S. Patent Nos. 6,982,742; 6,424,369; 6,452,626; and 7,002,621 (collectively, "Challenged Patents") among other patents in the United States District Court for the District of Colorado. *Cellect, LLC v. Samsung Elecs. Co.*, No. 1:19-cv-00438-CMA-MEH (D. Colo.) (the "District Court Litigation"). In February 2020, Samsung requested the underlying *ex parte* reexamination proceedings for certain claims of the Challenged Patents ("Challenged Claims") based on obviousness-type double patenting. These defenses have also been raised in the District Court Litigation. This Court's review of the PTAB's decisions regarding

[1] Pursuant to Fed. R. App. P. 29(b)(4)(E), the amici state that no counsel for a party authored this brief in whole or in part, no party or its counsel contributed money that was intended to fund preparing or submitting the brief, and no one but the amici and their counsel contributed financially to the brief's preparation and submission.

these issues will directly impact Samsung's defenses in the District Court Litigation as this Court would also review any determination from the district court.

Samsung submits this brief as *amici curiae* to provide further clarification why the Patent Trial and Appeal Board's ("Board") final written decisions should be affirmed.

## SUMMARY OF ARGUMENT

The doctrine of double patenting cements the legislative limitation of 35 U.S.C. § 101 by prohibiting a party from obtaining an extension of the right to exclude through claims in a challenged patent that are not patentably distinct from claims in another commonly-owned patent. To allow a patentee to obtain multiple patents claiming patentably indistinct inventions risks providing the patentee an unjustified timewise extension of the right to exclude as well as possibly subjecting accused infringers to multiple suits by different assignees for patentably-indistinct alleged inventions.

The practice of filing serial continuation applications directed to obvious variations of the same alleged invention is particularly likely to lead to unjustified timewise extensions due to the likelihood that differences between applications in delays before the Patent Office will lead to different patent term adjustments ("PTAs"). A terminal disclaimer, if filed for the challenged patent before the expiration of the other patent with patentably-indistinct claims (the reference patent),

cures the obviousness-type double patenting defect. But, absent a timely terminal disclaimer, the only remedy is to invalidate the challenged patent claims that are patentably indistinct.

Here, rather than argue that its serially-filed continuations claim patentably distinct inventions and thus deserve their respective timewise extensions, Cellect attacks the use of related patents as the basis for a challenge under the doctrine of obviousness-type double patenting.[2] Cellect's arguments, however, distort the applicable statutes, their legislative history, and this Court's prior holdings.

To analyze whether a claim is invalid for obviousness-type double patenting, the court or Patent Office must: 1) construe the claims in the earlier-expiring patent and the claims in the later-expiring patent and determine the differences, and 2) "determine[] whether those differences render the claims patentably distinct." *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1374 (Fed. Cir. 2014) (quoting *Sun Pharm. Indus. v. Eli Lilly & Co.*, 611 F.3d 1381, 1384-85 (Fed. Cir. 2010)); *see also id.* (noting that an "earlier-expiring patent could qualify as a double patenting reference, and thus invalidate a[] … later expiring patent") (citation omitted). That is exactly what the Board did

[2] Specifically, the Challenged Claims are claims 22, 42, 58, 66 of U.S. Patent No. 6,982,742; claims 1, 17, 19, 21, 22, 27, 49, 55, 61 of U.S. Patent No. 6,424,369; claims 1, 5, 11, 33, 34, 58, 64 of U.S. Patent No. 6,452,626; and claims 25-29, 33 of U.S. Patent No. 7,002,621.

in the underlying reexaminations. And Cellect does not dispute that the Challenged Claims are patentably indistinct from the earlier-expiring reference claims.

Had Cellect actually filed terminal disclaimers (tying both expiration and ownership to the reference patents) before expiration of the reference patents (it did not), then it might have been able to preserve the validity of the Challenged Claims. But Cellect never filed terminal disclaimers and cannot do so now after the reference patents have expired, because Cellect has already obtained the unwarranted benefit.

Cellect's arguments comparing 35 U.S.C. § 154 regarding patent term adjustments to § 156 regarding patent term extensions ("PTEs") are a red herring. This Court has already considered the differences in the text of these statutes and, as a consequence of the contrasting language, concluded that PTA and PTE should be treated differently. *See Novartis AG v. Ezra Ventures LLC,* 909 F.3d 1367, 1373-74 (Fed. Cir. 2018); *Merck & Co. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317, 1322-23 (Fed. Cir. 2007). And this Court has repeatedly recognized that double patenting applies where the challenged patent expires after the reference patent due solely to a PTA and where the challenge claims are not subject to any PTE. In *Abbvie*, for example, the Court specifically recognized the problem of inventors "securing a second, later expiring patent for the same invention … still exists [because] [p]atents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to [PTA]" under 35 U.S.C. § 154(b). 764 F.3d at 1373

(citing *In re Berg*, 140 F.3d 1428, 1430 (Fed. Cir. 1998)); *see also Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1216 (Fed. Cir. 2014) ("Permitting ***any*** earlier expiring patent [an inventory has on obvious variants of his invention] to serve as a double patenting reference….") (emphasis added)*; In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009) (recognizing "there may still be the possibility of unjust time-wise extensions arising from [PTAs]").

Cellect's arguments that obviousness-type double patenting is inequitable are similarly without basis. While "equitable" considerations need not be proven in each individual case, this Court's justifications for obviousness-type double patenting are on full display here. Not only has Cellect enjoyed an unjustified timewise extension of the term for each challenged patent, but it also maintained the ability to separately divide these rights among different owners throughout the lives of the Challenged Patents. Cellect complains that the examiner did not raise these issues during prosecution (an argument this Court has repeatedly rejected) but ignores that Cellect failed to meet its duty of candor and good faith toward the Patent Office by neglecting to inform the examiner of its relevant filings during prosecution of the Challenged Patents.

The decisions should be affirmed.

## ARGUMENT

### I. The Board Properly Affirmed the Rejection of the Challenged Claims for Obviousness-Type Double Patenting Because Cellect Failed to Terminally Disclaim Patentably-Indistinct Claims Among Patents Sharing a Common Inventor and Failed to Alert the Examiner, as Was Its Duty

Obviousness-type double patenting applies when a single entity seeks or obtains patentably-indistinct claims across multiple patents. This longstanding doctrine of patent law "is based on the core principle that, in exchange for a patent, an inventor must fully disclose his invention and promise to permit free use of it at the end of his patent term." *Gilead*, 753 F.3d at 1212. The Federal Circuit has long recognized "two justifications for obviousness-type double patenting": 1) "to prevent the unjustified timewise extension of the right to exclude granted by a patent," and 2) prevent the risk of "multiple infringement suits by different assignees asserting essentially the same patented invention." *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) (quoting *In re Van Ornum*, 686 F.2d 937, 943-44 (C.C.P.A. 1982); citing *Fallaux*, 564 F.3d at 1319).

To ensure that the public is not subjected to these concerns, a patentee claiming obvious variations of an invention in multiple patents can simply file a terminal disclaimer. Terminal disclaimers are expressly permitted by statute to "disclaim or dedicate to the public … any terminal part of the term" of a patent. 35 U.S.C. § 253(b). A terminal disclaimer guarantees the public's free use of the

invention at the expiration of the reference patent and guarantees the reference and challenged patents are commonly owned throughout the duration of this patent term. *See Van Ornum*, 686 F.2d at 939; 37 C.F.R. § 1.321(b)(2), (c)(3), (d)(3).

Where a patentee fails to file a terminal disclaimer before the reference patent's expiration, however, the patentee obtains an unjustified timewise extension of the Challenged Claims. Thus, as this Court has held, a "terminal disclaimer filed after the expiration of the earlier patent over which claims have been found obvious cannot cure obviousness-type double patenting." *Boehringer Ingelheim Int'l GmbH v. Barr Laboratories, Inc.*, 592 F.3d 1340, 1348 (Fed. Cir. 2010). As a result, the claims are invalid. *Id*.

Here, Cellect does not dispute that each of the Challenged Claims is an obvious variant of its respective reference patent claim and that Cellect failed to file terminal disclaimers before the reference patents expired. *See* Blue Br. 7; Appx5; Appx43; Appx54; Appx79. Consequently, the Board properly affirmed the rejections of the Challenged Claims because: 1) Cellect received, through application of PTA, an unjustified extension of the lives of the Challenged Claims, and 2) separate and apart from PTA, Cellect's decision to not file a terminal disclaimer introduced the risk of harassment by multiple entities for patentably indistinct claims.

### A. Cellect's Failure to File Terminal Disclaimers Before Expiration of the Reference Patents Resulted in Unjustified Timewise Extensions of the Challenged Claims

The Board properly affirmed the rejection of the Challenged Claims based on the first justification for double patenting challenges: "to prevent unjustified timewise extension of the right to exclude granted by a patent *no matter how the extension is brought about*." *Van Ornum*, 686 F.2d at 943-44 (emphasis added) (quoting *In re Schneller*, 397 F.2d 350 (C.C.P.A. 1968)). "The ban on double patenting ensures that the public gets the benefit of the invention after the original period of monopoly expires." *Abbvie*, 764 F.3d at 1373. "The bar against double patenting was created to preserve that bargained-for right held by the public." *Gilead*, 753 F.3d at 1212.

The problem of unjustified timewise extensions is particularly illustrated by Cellect's practice of filing serial continuation applications on obvious variations of the same alleged invention. Due to natural delays in the Patent Office, patent applications may be delayed in their prosecution, resulting in some applications obtaining a PTA extending the expiration date of that particular patent. By some estimates, more than 50% of patents issued between 2005 and 2017 received PTAs, with approximately 80% of patents issued in 2011 receiving PTAs. *See* Dennis Crouch, *Patent Term Adjustment Statistics*, Patently-O (Nov. 20, 2016), https://patentlyo.com/patent/2016/11/patent-adjustment-statistics.html (last visited

July 18, 2022). By filing more serial applications on the same patently-indistinct invention, patentees increase the likelihood of garnering a longer, unjustified extension of the right to exclude through such different PTAs. To address the inequitable benefit such patentees would receive, patentees can file a terminal disclaimer to its earlier-expiring patent that claims a patentably-indistinct invention. But, where a patentee fails to do so before the reference patent expires, the only equitable solution is to invalidate the patentably-indistinct claims of the challenged patent—leaving the patentee with only any patentably-distinct claims of the challenged patent in addition to the claims of the reference patent. *Boehringer*, 592 F.3d at 1348.

Each of Cellect's serially-filed patents challenged here has already enjoyed an unjustified timewise extension of rights beyond the reference patent:

| **EPR Control No.** | **Challenged Patent (Expiration Date)** | **Reference Patent (Expiration Date)** | **Number of Days of Extended Monopoly** |
|---|---|---|---|
| 90/014,453 | 6,982,742 (10/2/2019) | 6,424,369 (11/20/2017) | 681 days |
| 90/014,454 | 6,424,369 (11/20/2017) | 6,862,036 (10/6/2017) | 45 days |
| 90/014,455 | 6,452,626 (12/4/2017) | 6,424,369 (11/20/2017) | 14 days |
| 90/014,457 | 7,002,621 (11/4/2019) | 6,452,626 (12/4/2017) | 700 days |

Blue Br. 11-12; Appx4-5; Appx43-44; Appx53-54; Appx78. Each of these patents has, therefore, already deprived the public of its "right to use the invention claimed in [the patents] and all obvious modifications of th[ose] invention[s]" after the

reference patents expired. *Gilead*, 753 F.3d at 1217. Because the reference patents have all expired, Cellect cannot undo the unjustified timewise extensions by retroactively disclaiming the PTA to align the expiration dates of each Challenged Patent with its corresponding reference patent. *See Boehringer*, 592 F.3d at 1348-49 (citing *Van Ornum*, 686 F.2d at 943-44). The Board therefore properly rejected the Challenged Claims based on an unjustified timewise extension of Cellect's rights in the reference patents.

This Court has found that, where two patents that claim the same invention have different expiration dates, the earlier-expiring patent qualifies as a double patenting reference and invalidates the later-expiring patent. *Abbvie*, 764 F.3d at 1374; *Gilead*, 753 F.3d at 1212, 1217. Whether the two patents are related through continuations does not alleviate the risks of an unjustified timewise extension or of harassment by multiple assignees. Indeed, this Court has repeatedly recognized that obviousness-type double patenting continues to apply where the patents have the same effective filing date precisely because they "can have different patent terms due to [patent term adjustments]." *Abbvie*, 764 F.3d at 1373 (citing 35 U.S.C. § 154(b)); *Berg*, 140 F.3d at 1430; *In re Goodman*, 11 F.3d 1046, 1048-49 (Fed. Cir. 1993)); *Fallaux*, 564 F.3d at 1319. Here, it is undisputed that the Challenged Claims are obvious variants of the claims of their respective reference patents—yet, rather than file terminal disclaimers, Cellect accepted PTAs for each of these Challenged

Patents that extended their terms beyond that of their respective reference patent. Because "it is the comparison of [] patent expiration dates that should control," each of the earlier-expiring reference patents qualifies as a double-patenting reference. *Gilead*, 753 F.3d at 1215.

Cellect's arguments to the contrary rely on obscuring the differences between 35 U.S.C. §§ 154 and 156. Specifically, Cellect argues that, like the treatment of PTE under § 156 in *Novartis*, a patent should not be at risk of invalidation for double patenting when the difference in patent terms between the challenged and reference patents is caused by a PTA under §154. 909 F.3d at 1373-75 (referencing *Merck*, 482 F.3d at 1322 (Fed. Cir. 2007)). The plain language of 35 U.S.C. §§ 154 and 156, and the distinctions between them, however, confirm that double patenting is assessed *after* any PTA is applied, and without regard to whether any PTE is added. While PTA and PTE are related concepts, Congress has clearly distinguished between them. Title 35 expressly recognizes that patents can be subject to both PTAs (under Section 154) and PTEs (under Section 156). *See* 35 U.S.C. § 156(a) ("The term of a patent … shall be extended in accordance with this section from the original expiration date of the patent, which shall include any patent term adjustment granted under section 154(b)…"). Significantly, where Section 154 expressly includes provisions that subject PTAs to terminal disclaimers, Section 156 makes no such qualification to PTEs. Specifically, Section 154(b)(1) qualifies each of the

enumerated adjustments of the patent term as being "[s]ubject to the limitations under paragraph (2)"; that paragraph expressly excludes PTA accrual when a terminal disclaimer applies. *See* 35 U.S.C. § 154(b)(2) (enumerating limitations to PTAs including limitations imposed by terminal disclaimer). By contrast, Section 156, governing PTEs, does not include a similar limitation, and instead applies any timewise extension after "includ[ing] any patent term adjustment granted under section 154(b)."

While both Sections 154 and 156 state that the term of the patent "shall be extended," as explained above, Section 154's statement is limited by a terminal disclaimer (i.e., "[s]ubject to the limitations under paragraph (2)"), whereas Section 156's extension is not. As *Merck* and *Novartis* emphasized, unlike Section 154, Section 156 "contains 'no similar provision that excludes patents in which a terminal disclaimer was filed from the benefits of Hatch-Waxman extensions.'" *Novartis AG,* 909 F.3d at 1373-74 (quoting *Merck*, 482 F.3d at 1322). Based on this contrast in the statutory language between Sections 154 and 156, this Court has held that "obviousness-type double patenting … appl[ies]" when the challenged patent, "under its original expiration date without a PTE, should have been (but was not) terminally disclaimed." *Id.* Thus, double patenting is assessed based on the original expiration date—calculated after any PTA, and subject to any filed terminal disclaimers under Section 154(b)(2)(B)—before any PTE is added.

Cellect's argument—based on the statutory language concerning PTE—that double patenting should instead be assessed *before* applying any PTA flies in the face of this statutory language. Unlike Section 156, which does not recite a limitation based on terminal disclaimers, Section 154 is limited by paragraph 2, which includes terminal disclaimers to avoid double patenting.

1. *Cellect Misinterprets the Plain Language of the PTA and PTE Statutes and this Court's Precedent*

Cellect's arguments for why the Challenged Patents should not be subject to obviousness-type double patenting are premised on its misinterpretations of the plain language of the PTA and PTE statutes and this Court's precedent. Cellect attempts to improperly equate the "shall be extended" clauses in the two statutes despite the critical difference in the statutory framework of these two different provisions. Blue Br. at 23.

As an initial matter, this Court has already determined that double patenting applies even when the difference in expiration dates between the patents is solely due to PTA. For example, in *Abbvie*, this Court reasoned that double patenting applies when one patent has an unjustified timewise extension, even for "[p]atents claiming overlapping subject matter that were filed at the same time" because such patents "still can have different patent terms *due to examination delays at the PTO*." 764 F.3d at 1373 (citing § 154(b) related to PTAs) (emphasis added).

In an effort to explain its unjustified timewise extension, Cellect argues that PTA should be applied in the same manner PTE was applied in *Merck* and *Novartis*. Blue Br. at 23, 26, 31-32. But, Cellect's reliance on *Merck* and *Novartis* is misplaced. As previously discussed, the basis for both holdings was "the contrast between § 156 for PTE with the language of § 154 for [PTA]." *Novartis*, 909 F.3d at 1373-74; *see also Merck*, 482 F.3d at 1321-22.

*Merck* explained that while PTE "shall run from the expiration date of the patent, as adjusted under Section 154(b) to make up for certain PTO delays," the PTA statute "expressly excludes patents in which a terminal disclaimer was filed from the benefit of a term adjustment for PTO delays." *Merck*, 482 F.3d at 1321-22 (citing 35 U.S.C. §154(b)(2)(B)). The necessity of a terminal disclaimer is thus examined after the PTA is applied but before PTE is applied. *Merck*, 482 F.3d at 1322-23 (recognizing that because "[PTE] is computed [from] the terminally disclaimed date" objectives of both terminal disclaimers and PTEs are satisfied).

Cellect's reliance on *Novartis* is similarly misplaced. *Novartis* is a logical extension of *Merck*, but in the context of obviousness-type double patenting instead of a terminal disclaimer that was filed during prosecution. *Novartis*, 909 F.3d at 1369. In *Novartis*, the patent owner had secured five years of PTE on one of its patents, and the patent challenger attempted to invalidate the patent or have it terminally disclaimed on obviousness-type double patenting grounds based on the

patent's term extension beyond the expiration date of a related patent. *Id.* at 1369-70. Leveraging its prior holding in *Merck* regarding terminal disclaimers, this Court found:

> [I]f a patent, under its original expiration date without a PTE, *should have been (but was not) terminally disclaimed* because of obviousness-type double patenting, then this court's obviousness-type double patenting case law would apply, and the patent could be invalidated. However, if a patent, under its pre-PTE expiration date, is valid under all other provisions of law, then it is entitled to the full term of its PTE.

*Id.* at 1374 (emphasis added). The Court therefore held "a PTE pursuant to § 156 is valid so long as the extended patent is otherwise valid without the extension." *Id.* at 1375.

The differences in statutory language outlined in *Merck* and *Novartis* show that Congress had different intents for adjusting the patent term under Section 154 and extending it under Section 156. Cellect's attempt to treat PTA and PTE as equivalent contradicts Congress's intent and this Court's analysis in *Merck* and *Novartis*. Indeed, *Novartis* makes clear that double patenting applies for patents that "should have been (but [were] not) terminally disclaimed," regardless of whether any PTE would apply. *Id.* at 1374. That is the case here. Cellect's patents "should have been (but [were] not) terminally disclaimed," and therefore, pursuant to *Novartis*, the patentably-indistinct claims should be invalidated for obviousness-type double patenting.

Cellect's reliance on *Braat* is also misplaced. Blue Br. 3 (quoting *In re Bradt*

[sic], 937 F.2d 589, 592 (Fed. Cir. 1991)). In *Braat*, the challenged claims and reference claims were found patentably distinct under the "two-way" obviousness-type double-patenting test. Here, Cellect does not dispute that the Challenged Claims and reference claims are patentably indistinct and the "two-way" double patenting test does not apply.

Cellect's reliance on the district court decisions *Amgen* and *Mitsubishi* (Blue Br. 32-39) is also unavailing. Both decisions fail to fully address the contrast in statutory language between Sections 156 and 154 (the basis of the *Novartis* and *Merck* decisions). *Mitsubishi Tanabe Pharma Corp. v. Sandoz Inc.*, 533 F. Supp. 3d 170, 214 n.45 (D.N.J. 2021); *Amgen, Inc. v. Sandoz Inc.*, No. 18-11026 (MAS) (DEA), 2021 WL 5366800, at *26-27 (D.N.J. Sept. 20, 2021)). Indeed, as the Board noted, *Mitsubishi's* brief discussion of the two statutes shows that the district court failed to understand that filing a terminal disclaimer (prior to expiration of the reference patent) is how a patentee cures a successful obviousness-type double patenting challenge. Appx40 (citing *Mitsubishi*, 533 F. Supp. 3d at 214 n.45).

#### 2. *The Legislative History Contradicts Cellect's Attempts to Equate PTA and PTE*

Cellect's argument that Congress intended PTA and PTE to be subject to the same limitations is also belied by the legislative history. Congress amended the patent statute so that Section 156 includes a specific reference to Section 154(b). H.R. Rep. No. 106-287, pt. 1, at 10 (1999) (amending Section 156 to include "which

shall include any patent term adjustment granted under section 154(b)"). The entire explanation for the amendment was to "coordinate[] technical term adjustment provisions set forth in §154(b) with those in §156(a) of the Patent Act." *Id.* at 52.

Congress's intentions were not to align the principles underlying the PTA and PTE statutes, as Cellect argues (Blue Br. 22-23), but rather to make clear how "technical term adjustment[s]" under the PTA statute are "coordinate[d]" with those adjustments under the PTE statute. *See* H.R. Rep. No. 106-287, pt. 1, at 52. That is, PTA is assessed first, and then any PTE is added thereafter, as this Court has interpreted the statutes. *See, e.g.*, *Merck*, 482 F.3d at 1322-23; *Novartis*, 909 F.3d at 1373-74. Congress did not intend to allow the use of double patenting to prolong a patent term.

Cellect's argument that Congress intended PTAs to be limited by terminal disclaimer only by those who purposefully manipulate the system (Blue Br. 42) is also incorrect. The portions of the legislative history that Cellect relies upon address other limitations on PTA—not Section 154(b)(2)(B) addressing terminal disclaimer. In 1999, Congress enacted the American Inventors Protection Act (AIPA), which amended the patent statute to allow for PTAs, now codified as Section 154(b). As part of this amendment, Congress provided detailed requirements for how to calculate the PTA including details for how the patent term can be adjusted to account for delays in the Patent Office (under Subsection (b)(1)) and various

limitations on those adjustments (under Subsection (b)(2)). Section 154(b)(2)(C) specifically provides a penalty for those who do not properly engage in the examination procedure. *See* H.R. Rep. No. 106-287, pt. 1, at 8-9. In particular, this subsection states "[t]he period of adjustment of the term of a patent under paragraph (1) shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application." *Id.* at 9.

In connection with determinations of how to calculate the PTA, the Committee on the Judiciary provided the following statement in the legislative history:

> Title III amends the provisions in the Patent Act that compensate patent applicants for certain reductions in patent term *that are not the fault of the applicant*. The provisions that were initially included only provided adjustments for up to 10 years for secrecy orders, interferences, and successful appeals. Not only are these adjustments too short in some cases, but no adjustments were provided for administrative delays caused by the PTO that were beyond the control of the applicant. Accordingly, Title III removes the 10-year caps from the existing provisions, adds a new provision to compensate applicants fully for PTO-caused administrative delays, and, for good measure, includes a new provision guaranteeing diligent applicants at least a 17-year term by extending the term of any patent not granted within three years of filing. Thus, no patent applicant diligently seeking to obtain a patent will receive a term of less than the 17 years as provided under the pre-GATT standard; in fact, most will receive considerably more. *Only those who purposely manipulate the system to delay the issuance of their patents will be penalized under Title III, a result that the Committee believes entirely appropriate*.

H.R. Rep. No. 106-287, pt. 1, at 49-50 (emphasis added). Cellect attempts to take

this last sentence out of context to assert that, because Congress intended to penalize only those who "purposely manipulate the system," a terminal disclaimer is not necessary otherwise. Blue Br. 42. But this last statement is discussing Section 154(b)(2)(C), which is the subsection that penalizes the applicant for failure to engage in prosecution. In contrast, Section 154(b)(2)(B), relating to terminal disclaimers, is not a "penalty," but is instead an explanation of the manner in which a PTA can be limited. Congress did not intend to introduce a "*mens rea*" requirement before a terminal disclaimer is required.

Indeed, double patenting was an issue the Federal Circuit had already tackled many years prior to this amendment in, *e.g.*, *Van Ornum*, 686 F.2d 937. And it was understood that one consequence of double patenting was the need to file a terminal disclaimer to ensure that the patent would not have a PTA that extended the term beyond that of a commonly-owned patent with patentably-indistinct claims. *Id.* at 942. Had Congress intended to limit double patenting and the related requirement for terminal disclaimers to only those who purposely manipulate the system, it would have said so clearly. *See Milner v. Dep't of the Navy*, 562 U.S. 562, 572 (2011) ("We will not … allow[] ambiguous legislative history to muddy clear statutory language."); *Alaskan Arctic Gas Pipeline Co. v. U.S.*, 831 F.2d 1043, 1046 (Fed. Cir. 1987) ("[I]n cases involving statutory construction, … the statutory language itself is the best indication of congressional intent."); *see also Forest Grove Sch. Dist. v.*

*T.A.*, 557 U.S. 230, 239-40 (2009) ("Congress is presumed to be aware of a[] … judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.") (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)).

3. *Considering Double Patenting After Application of the PTA Does Not Cut-off a Statutorily Authorized Timewise Extension*

Contrary to Cellect's argument (Blue Br. 25-27), a finding of double patenting does not "cut off a statutorily-authorized time extension" when the time extension is a PTA subject to a terminal disclaimer under Section 154(b)(2)(B). Rather, as discussed in § I.A.1 *supra*, this Section of the statute expressly limits the timewise extension under PTA when a terminal disclaimer applies—such as when a patentee has claimed patentably-indistinct claims through multiple patents. *See* 37 C.F.R. § 1.321 (setting forth requirements of terminal disclaimer necessary to overcome an obviousness-type double patenting rejection); *Van Ornum*, 686 F.2d at 944-48 (holding 37 C.F.R. § 1.321 a valid regulation); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 940 (Fed. Cir. 1992) (holding "obviousness-type double patenting can be overcome by filing a terminal disclaimer"). In other words, when a challenged patent should have been terminally disclaimed—to cure an obviousness-type double patenting defect—any PTA that extends the life of the patent beyond the expiration of the reference patent is an *unjustified* timewise extension, not one that has been authorized by statute.

Here, Cellect failed to file terminal disclaimers for each of the Challenged

Patents that claim mere obvious variations of an alleged invention and thus obtained for itself *unjustified* timewise extensions—not authorized by statute. The Board's decisions, therefore, do not "cut-off a statutorily-authorized time extension," but instead rectify Cellect's unjust enrichment obtained through filing multiple patents on patentably-indistinct alleged inventions and failing to file terminal disclaimers before expiration of the reference patents.

### B. Cellect's Failure to File Terminal Disclaimers Before Expiration of the Reference Patents Also Resulted in a Risk of Harassment by Multiple Assignees of the Challenged and Reference Patents

Regardless of whether PTA applies or should be added to the term before assessing double patenting, the Board properly affirmed the rejection of the Challenged Claims on an independent basis related to the second justification for double patenting challenges: "to prevent multiple infringement suits by different assignees asserting essentially the same patented invention." *Hubbell*, 709 F.3d at 1145; *see also Fallaux*, 564 F.3d at 1319; *Van Ornum*, 686 F.2d at 944-48 (approving of the requirement for common ownership in terminal disclaimers under 37 C.F.R. § 1.321); *In re Griswold*, 365 F.2d 834, 840 n.5 (C.C.P.A. 1966) (noting the co-ownership requirement is a creative solution to potential harassment suits from two separate patents). For example, an accused infringer is subject to the risk that each pair of Challenged and reference Patents could be owned by separate entities that can each independently file suit. This would require the accused

infringers to battle patentably-indistinct claims on multiple fronts—precisely the issue that underlies the second justification for double patenting challenges. Regardless of whether the patents claiming patentably-indistinct inventions are actually owned by separate entities, just the "possibility of multiple suits against an infringer" is enough to require a terminal disclaimer to avoid harassment of potential infringers as the Court recognized in *Van Ornum*. 686 F.2d at 948 (finding valid the Patent Office's regulation that requires common ownership for a terminal disclaimer to be effective because harassment was no longer "a remote possibility").

Recognizing that a terminal disclaimer was necessary to also address this risk of split ownership, the Board here properly found that the Challenged Claims are invalid regardless of whether PTA is applied or the Challenged Patents expire the same day as the respective reference patents. Appx18-21; Appx43-46; Appx67-70; Appx91-94. While the patents in *Van Ornum* were owned by separate entities, this Court should not require an accused infringer actually be subject to harassment by multiple assignees before double patenting applies. For example, when double patenting rejections are made during prosecution, the relative expiration dates of the patents are unknown and there cannot have been any harassment with the challenged claims because the patent has not issued yet. Nevertheless, this Court has approved of the requirement that the owner must attest to co-ownership under 37 C.F.R. §

1.321 for the terminal disclaimer to be effective. *See Van Ornum*, 686 F.2d at 944-48; *Griswold*, 365 F.2d at 840 n.5.

The CCPA's decision in *Jentoft* did not hold that a possibility of harassment is insufficient to invalidate the claims. *Cf.* Br. of Pharm. Research and Mfrs. of Am. (PhRMA) as *Amicus Curiae*, 21 (*citing In re Jentoft*, 392 F.2d 633, 641 (C.C.P.A. 1968)). In *Jentoft*, both the challenged and reference patents had yet to expire; the CCPA stated that a terminal disclaimer need not include a common ownership provision because the CCPA did not "see the courts bogged down with harassment suits" and thought the proper remedy "for dealing with [harassment suits]" was "inflicting the plaintiff with attorney's fees." 392 F.2d at 641. This Court in *Van Ornum* subsequently concluded, however, that "it [is] desirable to tie both the termination and the ownership" because:

> Even though both patents are issued to the same patentee or assignee, it [is] possible that ownership of the two will be divided by later transfers and assignments. The possibility of multiple suits against an infringer by assignees of related patents has long been recognized as one of the concerns behind the doctrine of double patenting.

686 F.2d at 944 (quoting Chisum on Patents § 9.04(2)(b) (1981)), 948 (alteration in original). Rather than risk members of the public being subject to litigation across multiple suits by different owners concerning patentably-indistinct claims, a common owner of patents containing patentably-indistinct claims must file a

terminal disclaimer verifying that the patents are only enforceable so long as they are commonly owned.

Applying *Van Ornum*, the Board properly found that there "is no need to wait until *actual* harassment by multiple assignees," noting that "[o]ne goal of double patenting and terminal disclaimers is to preemptively prevent the risk of such harassment." Appx20 (emphasis original); Appx45-46; Appx70; Appx93-94. Consistent with this Court's decision in *Boehringer*, the burden is on the patentee to file the requisite terminal disclaimer before expiration of the reference patent—otherwise the challenged claims are invalid. 592 F.3d at 1348. As the party with knowledge of the claims in each of its applications, the patentee is the party in the best position to avoid the problem created by filing multiple applications reciting patentably-indistinct subject matter. *See* 37 C.F.R. § 1.56 (setting forth applicant's duty to disclose information material to patentability); *see also* MPEP § 2001.06(b) (8th ed., 2001) (explaining prosecuting attorney should not "assume that [a PTO examiner] retains details of every pending file in his mind when he is reviewing a particular application … [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance") (alteration in original) (quoting *Armour & Co. v. Swift & Co.*, 466 F.2d 767, 779 (7th Cir. 1972)). Indeed, Cellect's failure to alert the Examiner of its multiple filings covering obvious variants of the same alleged invention was a breach of its duty to disclose—and is

fatal to Cellect's arguments that there is no substantial new question of patentability (Blue Br. 45-52). *See Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1365-66 (Fed. Cir. 2003) (holding non-disclosure of pending applications claiming patentably-indistinct claims "meets the threshold level of materiality under … Rule 56"); *see also KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed. Cir. 1985) (a "lapse on the part of the examiner does not excuse the applicant") (citation omitted). Contrary to Cellect's hyperbole (Blue Br. 7), applicants need not file preemptive terminal disclaimers for every application—only those in which the applicant is claiming patentably-indistinct subject matter. Cellect's failure to file the terminal disclaimers prior to the expiration of the reference patents invalidates the patentably-indistinct claims challenged in the reexaminations regardless of whether PTA applies.

## II. Invalidating Cellect's Claims for Obviousness-Type Double Patenting After Expiration of the Reference Patent Does Not Produce an Inequitable Result

Invalidating claims of a challenged patent when the patentee has already enjoyed the full term of patentably-indistinct claims in a reference patent does not produce an inequitable result. Rather, because that patentee chose to not file a terminal disclaimer over the reference patent before it expired, the patentee has already improperly benefited from an unjustified timewise extension of the challenged claims as well as the ability to separately assign and enforce the rights in

those patentably-indistinct claims. Cellect's contrary position would actively encourage patentees to flood the Patent Office with applications claiming patentably-indistinct claims in the hope that some would garner more PTA than others. If there is any inequity here, it is to the public—which has already had to confront an unjustified timewise extension of the bargained-for patent term, and which would suffer further from the gamesmanship that Cellect's position would engender.

The arguments of *amici* in support of Cellect are inapposite. Certain a*mici* speculate that some applicants may file an original application and continuation applications with the expectation that the original application will be subject to significantly more PTA than later-filed continuations. *See* Br. of Intellectual Property Owners Association (IPO) as *Amicus Curiae*, 6-8; Br. of PhRMA as *Amicus Curiae*, 11-12. IPO argues that applying obviousness-type double patenting to applications "shar[ing] the *same* effective filing date" is inconsistent with the policy underpinning the doctrine. *See* Br. of IPO as *Amicus Curiae*, 6. But this Court's cases already address those concerns. By filing a terminal disclaimer, the patentee can avoid any application of obviousness-type double patenting. In the absence of a disclaimer, however, the applicant would obtain a timewise extension of a patentably-indistinct invention—one justification that forms the basis of double patenting. As this Court has already recognized, one "purpose of the doctrine" of

double patenting was "to prevent an inventor from securing a second, later expiring patent" including those "filed at the same time," but having "different patent terms due to examination delays at the PTO." *Abbvie*, 764 F.3d at 1373 (citing § 154(b) related to PTAs).

Indeed, "[t]he fundamental reason for the rule [of obviousness-type double patenting] is *to prevent unjustified timewise extension of the right to exclude* granted by a patent no matter how the extension is brought about." *Van Ornum*, 686 F.2d at 943-44 (quoting *Schneller*, 397 F.2d 350, 354 (C.C.P.A. 1968)); *see also Boehringer*, 592 F.3d at 1347; *Lonardo*, 119 F.3d 960, 965 (Fed. Cir. 1997). By failing to file a terminal disclaimer before the expiration of the reference patent, the "patentee wrongly purports to inform the public that it is precluded from making, using, selling, offering for sale, or importing the claimed invention during a period after the expiration of the earlier patent." *Boehringer*, 592 F.3d at 1348. And, because a "patentee cannot undo this unjustified timewise extension … it has already enjoyed," the obviousness-type double patenting cannot be cured by retroactively filing a terminal disclaimer. *Id*.

Cellect's belated request for an "opportunity to decline the adjustment" after it has already enjoyed the benefits of this extension is foreclosed by *Boehringer*. Cellect inequitably benefitted from timewise extensions of its alleged inventions through the obvious variants included in the Challenged Claims. Cellect has already

deprived the public of practicing such alleged inventions themselves after the proper expiration, which is the *quid pro quo* of Cellect's bargained-for right when obtaining a patent. *Boehringer*, 592 F.3d at 1348. Moreover, permitting Cellect to carry on with its patentably-indistinct claims enables it to split their ownership, thereby subjecting accused infringers to the risk of infringement suits for multiple assignees. Before these reference patents expired, Cellect should have filed terminal disclaimers to obviate such concerns. By waiting until after the reference patents expired and unlawfully extending the expiration of patentably-indistinct claims, Cellect forfeited its right to these claims. *Id.* ("[A] terminal disclaimer filed after the expiration of the earlier patent over which claims have been found obvious cannot cure obviousness-type double patenting.").

Invalidating the Challenged Claims still leaves Cellect with any patentably-distinct claims in the Challenged Patents and the reference patents. A finding of obviousness-type double patenting does not affect the validity of the reference patent which, if valid, continues to provide patentee all the rights afforded for its alleged invention. That result, which is what this Court's precedent provides, is the equitable outcome. That is the underlying basis for double patenting—getting one patent on one invention and obvious variants thereof. *Gilead*, 753 F.3d at 1212 ("Federal courts for over a century have applied the principles of the doctrine as a means to preserve the public's right to use not only the exact invention claimed by an inventor

when his patent expires, but also obvious modifications of that invention that are not patentably distinct improvements.”). Here, each of the Board’s findings as to obviousness-type double patenting, conducted on a patent-by-patent basis, leaves the validity of Cellect’s reference patent untouched.

While Cellect complains that the claims of a challenged patent may also serve as a reference patent for another double-patenting challenge (Blue Br. 3-6), Cellect has no one to blame but itself for having prosecuted its patents in this manner—filing chains of continuation applications with patentably-indistinct claims. Subject of course to any other validity challenges, Cellect will be left with at least one patent with the patentably-indistinct claims as well as any patentably distinct claims in the Challenged Patents.

## CONCLUSION

For these reasons and those discussed in the brief of the Director of the United States Patent and Trademark Office, Samsung respectfully requests that this Court affirm the final decisions of the Board finding claims 22, 42, 58, 66 of U.S. Patent No. 6,982,742; claims 1, 17, 19, 21, 22, 27, 49, 55, 61 of U.S. Patent No. 6,424,369; claims 1, 5, 11, 33, 34, 58, 64 of U.S. Patent No. 6,452,626; and claims 25-29, 33 of U.S. Patent No. 7,002,621 unpatentable for obviousness-type double patenting.

Respectfully submitted,

Dated: September 20, 2022

/s/ *Douglas Hallward-Driemeier*

Douglas Hallward-Driemeier
Scott A. McKeown
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Phone: (202) 508-4600

James L. Davis, Jr.
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone: (650) 617-4000

Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone: (212) 596-9000

*Counsel for Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

On September 20, 2022, the undersigned caused the foregoing document to be filed electronically by using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Douglas Hallward-Driemeier*
Douglas Hallward-Driemeier
*Counsel for Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 6,876 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ *Douglas Hallward-Driemeier*
Douglas Hallward-Driemeier
*Counsel for Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*