**2022-1293, -1294, -1295, -1296**

# United States Court of Appeals for the Federal Circuit

**IN RE CELLECT, L.L.C.,**

*Appellant*

*Appeal from the Patent Trial and Appeal Board in Nos. 90/014,453, 90/014,454, 90/014,455, 90/014,457*

**CORRECTED**
**BRIEF OF AMICUS CURIAE ROBERT A. ARMITAGE IN SUPPORT OF APPELLANT'S PETITION FOR REHEARING EN BANC**

ROBERT A. ARMITAGE
*AMICUS CURIAE*
320 Seaview Court #1811
Marco Island, FL 34145
(703) 801-6334
raarmitage@aol.com

# United States Court of Appeals for the Federal Circuit

*In re Cellect, L.L.C., 2022-1293, -1294, -1295, -1296*

## CERTIFICATE OF INTEREST

Amicus curiae Robert A. Armitage certifies the following:

1. **Represented Entities**. The name of every party or amicus represented by me is: Robert A. Armitage, appearing *pro se*.

2. **Real Party in Interest**. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: Not Applicable.

3. **Parent Corporations and Stockholders**. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: Not Applicable.

4. **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4). Not Applicable.

5. **Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b). None.

Date: November 15, 2023

/s/ Robert A. Armitage
Robert A. Armitage

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................ i

TABLE OF AUTHORITIES........................................................ iii

INTEREST OF AMICUS........................................................ 1

PROPOSED QUESTION – RECONSIDERATION ON REHEARING........................................................ 1

ARGUMENT........................................................ 2

A. This Court Could Consider Whether The Application Of *Res Judicata* Principles Alone Can Address Any "Potential For Harassment" Arising From Double Patenting................................. 3

B. This Court Could Consider Whether the URAA Mooted The "Unjustified Timewise Extension Of Exclusionary Rights" Rationale For Requiring Disclaimers Of Patent Term. ..................... 6

C. This Court Could Consider Whether A Judicial Rebuilding Of Double Patenting Law Could Result In The Elimination Of The Doctrine As A Ground For Invalidity Or Unpatentability............. 9

D. This Court Could Consider Whether The *Obiter Dicta* In The Panel Decision, Finding Non-Existent Relevance In PTA, Provides A Compelling Reason For Rehearing. ......................... 10

# TABLE OF AUTHORITIES

## Cases

*Eldred v. Ashcroft*, 537 US 186 (2003) .......................................... 10

*In re Fallaux*, 564 F.3d 1313 (Fed. Cir. 2009) .......................................... 4

*In re Griswold*, 365 F.2d 834 (C.C.P.A. 1966) .......................................... 4

*Therasense v. Becton, Dickinson and Co.,* 649 F.3d 1276 (Fed. Cir. 2011) *(en banc)* .......................................... 3

## Statutes

35 U.S.C. §101 .......................................... 6

35 U.S.C. §154 .......................................... 10

35 U.S.C. §156 .......................................... 10

Uruguay Round Agreements Act, Pub. L. No. 103–465, § 101, 108 Stat. 4809 .......................................... 1

## Other Authorities

Daniel Kazhdan, *Obviousness-Type Double Patenting: Why it Exists and When it Applies*, Akron Law Review (2019): Vol. 53, Iss. 4, Article 6. .......................................... 3

Robert A. Armitage, *Everything You Ever Wanted to Know About Double Patenting ... but Never Realized that You Needed to Ask (from the Makers of Prozac)*, currently available at Comm. on the Judiciary Hearing on H.R. 3309, Ser. No. 113-58, 113th Cong., pp.170-202 (Oct. 29, 2013) .......................................... 4

Robert A. Armitage, *Submission in Response to Docket No. PTO–P–2022–0025; Request for Comments on USPTO Initiatives To Ensure the Robustness and Reliability of Patent Rights* (Oct. 16, 2022) .......................................... 2

## INTEREST OF AMICUS

Amicus is a patent practitioner who believes that a ground-up rethinking of obviousness-type double patenting law is imperative.[1]

## PROPOSED QUESTION – RECONSIDERATION ON REHEARING

For Uruguay Round Agreements Act patents entitled to 20-year patent terms, should obviousness-type double patenting: (a) be found to exist *only if* at least one pair of claimed inventions in "*related patents*" (i.e., *one claimed invention from each of two patents in which neither represents prior art to the other*) are "*patentably indistinct*" from one another (i.e., *indistinct in the sense that, had either of the claimed inventions been prior art to the other, the other of the claimed inventions would be obvious and unpatentable*) and, (b) if found to exist, result—and result only—in addressing any issue of *res judicata*, arising in any action involving enforcement of either such patent, as though only a single patent had been granted containing all the claims of both patents, *such that obviousness-type double patenting would not constitute a ground of invalidity for any patent*

[1] No counsel for a party authored this brief in whole or in part, and no counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. Appellant consents to, and the Director of the USPTO does not oppose, the filing of this brief.

*claim and no longer require the examination or the reexamination of claimed inventions for obviousness-type double patenting.*

## ARGUMENT

Over the past quarter century, obviousness-type double patenting law has remarkably expanded, with the law becoming vastly more complicated and, in some respects, confused.[2] As a consequence, the administration of the law in the USPTO has become commensurately more burdensome, both for patent examiners and patent practitioners. Even though decades have passed since the enactment of the URAA, obviousness-type double patenting law can still confound even learned commentators in attempting to clearly understand the post-URAA parameters of the doctrine.[3]

During this time, "thickets" of *commonly owned "continuation" patents*, typically issued with patentably indistinct claims having common

---

[2] See, generally, pp. 14-19 from Robert A. Armitage, *Submission in Response to Docket No. PTO–P–2022–0025; Request for Comments on USPTO Initiatives To Ensure the Robustness and Reliability of Patent Rights* (Oct. 16, 2022) (https://downloads.regulations.gov/PTO-P-2022-0025-0006/attachment_1.pdf).

[3] "The billion-dollar question is how ODP applies to post-URAA patents that are related. Unfortunately, the Federal Circuit's statements provide inconsistent guidance." Daniel Kazhdan, *Obviousness-Type Double Patenting: Why it Exists and When it Applies*, Akron Law Review (2019): Vol. 53, Iss. 4, Article 6, p. 1046. (https://ideaexchange.uakron.edu/akronlawreview/vol53/iss4/6)

expiration dates, have grown dramatically. Notwithstanding the harassment potential from *commonly owned and commonly expiring* "patent thickets," they are today entirely free from any double patenting consequences.

These perplexing aspects of the law are in some respects akin to those present in the "inequitable conduct" doctrine as applied prior to this Court's *en banc* intervention in *Therasense*. As with the *Therasense* intervention, the present appeal could represent an ideal vehicle—for reasons detailed below—for this Court to undertake a similar policy-focused reconstruction of the law on obviousness-type double patenting.

### A. This Court Could Consider Whether The Application Of *Res Judicata* Principles Alone Can Address Any "Potential For Harassment" Arising From Double Patenting.

One of the two rationales for the judicial imposition of obviousness-type double patenting consequences is the "potential for harassment" that can arise if *separate patents* that contain patentably indistinct claims could be *separately enforced*. Historically, the law has focused on the potential for harassment that exists only when such patents become *separately owned*.[4]

---

[4] *In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009), citing to Robert A. Armitage, *Everything You Ever Wanted to Know About Double Patenting ... but Never Realized that You Needed to Ask (from the Makers of Prozac)*, currently available at Comm. on the Judiciary Hearing on H.R. 3309, Ser. No. 113-58, 113th Cong., pp.170-202 (Oct. 29, 2013). The "potential for harassment" rationale has dictated that double patenting (1)

The concern over separate ownership—as producing this potential for harassment—has never been much more than a theoretical one—because obviousness-type double patenting has traditionally applied only to "same inventor" or "same assignee" patent filings in which the claims of the respective patents involved did not have a prior art relationship to one another. Today, however, a single, original, nonprovisional patent filing can spawn a virtual fortress of commonly owned "continuation" patents, typically with common expiration dates—*such that a "common ownership" disclaimer imposes no real-world consequences*. The present appeal presents an opportunity for the Court to consider whether the "potential for

---

necessarily applies to patents with indistinct claims, even though such patents *were sought on the same date, issued on the same date, and will expire on the same date* and (2) requires a "separate ownership" disclaimer as part of a "terminal disclaimer" in order to obviate. See *In re Griswold*, 365 F.2d 834, 840 (C.C.P.A. 1966) (fn. 5). For decades, this policy driver of the law has prevented "prosecution gamesmanship" that would result from securing patentably indistinct claims in *simultaneously sought, issued, and expiring patents*. As an example, four same-day-expiring patents issued on four same-day patent filings could have claims to chemical compounds defined by a structural formula containing an "alkyl" or "R" group in which claims of the patents respectively defined this "R" group as having 5, 5-6, 4-5, or 4-6 carbon atoms. Absent double patenting law—these patents *could be both separately owned and separately enforced against the use or sale of the "pentyl" compounds (the compounds with the "R" group having 5 carbon atoms)*. Double patenting law applies and forces common ownership to address the potential for harassment arising from separate ownership.

harassment" in cases of obviousness-type double patenting is adequately addressed with anti-harassment consequences that apply only to the largely theoretical situation where the related, indistinct patents become separately owned. Most specifically, this Court could consider whether *commonly owned* patents containing patentably indistinct claims should also be subject to enforcement consequences.

Since all of obviousness-type double patenting law derives from the principle that only "*a* patent" is authorized for any single claimed invention (35 U.S.C. §101), multiple patents housing claims to patentably indistinct inventions should logically be treated—at least for enforcement purposes—as though only a single patent had issued containing all the patentably indistinct claims found in the separately issued patents containing such claims. For any single patent, even one containing a vast number of claims, the "potential for harassment" issue is entirely addressed through *res judicata* principles—because a single patent can only give rise to a single cause of action when asserted against an accused infringer's alleged acts of infringement.

This Court could clarify whether—irrespective of patent ownership—these same *res judicata* principles should apply in cases of patentably indistinct claims constituting obviousness-type double patenting. The Court

could decree that any attempt at separate enforcement of such patents should have the issue of *res judicata* addressed as though only a single patent had been issued with all the claims of both patents. *In addition, this Court could then consider whether requiring a "separate ownership" disclaimer during examination of a "double patent" becomes moot—given that any potential for harassment arising from the assertion of multiple patents with patentably indistinct claims would face such a res judicata bar*.

### B. This Court Could Consider Whether the URAA Mooted The "Unjustified Timewise Extension Of Exclusionary Rights" Rationale For Requiring Disclaimers Of Patent Term.

This Court could consider, as an issue of first impression, an aspect of the URAA patent term provisions that none of its post-1994 jurisprudence has yet specifically addressed: *Has "unjustified timewise extension of exclusionary rights," as a rationale for imposing temporal limitations on enforcement of patentably indistinct claims, been mooted by Congress, such that obviousness-type double patenting cannot now require any judicially imposed forfeiture of term with respect to a patent's exclusionary rights?*

Prior to the URAA, obviousness-type double patenting law was grounded on the foundational assumption that Congress had only authorized a fixed period of 17 years of exclusionary rights for a single patent, such that multiple patents containing claims to patentably indistinct inventions should

not be entitled to an aggregate exclusivity period of greater than 17 years. The courts did not quibble that a full 17-years of exclusivity was "justified" and could not be truncated by the courts in cases of double patenting.

Under the URAA, Congress reset what could be "justified" as an exclusionary period, *by authorizing exclusionary rights of greater than 17 years*. URAA patents issued on original, nonprovisional patent filings can provide exclusionary rights for up to a 20-year period. This 20 years can be diminished only by the necessary processing time in the USPTO before the patent issues. Indeed, in passing the URAA, Congress expressly extended the terms of previously issued patents beyond their pre-URAA 17-year terms in situations where the USPTO processing time had been less than 3 years.[5]

This Court could now consider whether the URAA's justification of up to 20 years of exclusionary rights for any single patent means that a "later expiration date," considered in isolation, can no longer be controlling in determining whether the aggregate period of exclusionary rights under a pair

---

[5] In this appeal, the aggregate period of exclusionary rights for all the patents involved in the obviousness-type double patenting issue is just over 17 years—i.e., ca. 17.3 years—which is a time period for exclusionary rights that Congress, through the URAA, has justified for a single patent issued on any original, nonprovisional patent filing whenever the processing time in the USPTO is less than 2.7 years.

of patents can be deemed unjustified. *Has the "expiration date" become irrelevant because it no longer establishes—unlike pre-URAA law—that the congressionally justified period of exclusionary rights would be exceeded?*

The actual period of exclusionary rights for any single URAA patent is no longer fixed, once again unlike the pre-URAA statute. In many situations where obviousness-type double patenting exists for URAA patents, the aggregate period of exclusivity for the patents can be far less than the 17-year period under the pre-URAA statute.[6] The paradoxical consequence is that, as Congress justified *longer* periods of exclusionary rights under a single patent through the URAA, the courts have demanded disclaimers in order to obviate double patenting that now commonly result in *shorter* aggregate periods of exclusionary rights than any individual patent was granted under pre-URAA law. *To address this paradox, this Court could consider whether the URAA's patent term has simply mooted altogether the possibility the aggregate exclusivity period in cases of double patenting could ever extend beyond the URAA period Congress justified.*

---

[6] This appeal is illustrative. Among the Cellect patents with patentably indistinct claims, their aggregate exclusivity period, exclusive of PTA, ran from July 17, 2002 through October 6, 2017—a period of 15.2 years. Thus, 1.7 years of PTA would have been needed before the pre-URAA 17-year exclusionary period could have been reached.

There is no longer any possible constitutional impediment to doing so. While the pre-URAA patent statute did not limit the time period during which patents with patentably indistinct claims could issue with separate 17-year exclusivity periods from issuance—*such that the statute itself failed to provide any constitutionally mandated "limited Time" for exclusionary rights in patentably indistinct claims*—the URAA has now capped the aggregate exclusivity period for patentably indistinct claims at 22 years.[7] This Court could consider whether the closure of this potential "limited Times" loophole through the URAA further supports the conclusion that *no URAA patent yields exclusionary rights not now congressionally justified*.[8]

### C. This Court Could Consider Whether A Judicial Rebuilding Of Double Patenting Law Could Result In The Elimination Of The Doctrine As A Ground For Invalidity Or Unpatentability.

By eliminating any requirement for forfeiture of patent term in cases of obviousness-type double patenting, and by transforming the "potential for

---

[7] Since no valid claim to a patentably indistinct invention can possibly be issued unless it is disclosed in a provisional patent filing made within one year of the issue date of an earlier-patented invention, any possible expiration date for a valid patent containing the patentably indistinct claim is capped at 22 years from the issue date of the earlier-patented invention.

[8] Congress acted to expressly justify "patent term extensions" under 35 U.S.C. §156 and "patent term adjustments" under 35 U.S.C. §154 for "limited Times." *Eldred v. Ashcroft*, 537 US 186 (2003).

harassment" rationale to a limitation on patent enforcement, this Court could hold that obviousness-type double patenting raises at most a question of res judicata in the case of attempted enforcement of a second patent with patentably indistinct claims with respect to a reference patent. *Were this Court to do so, the doctrine could be transformed so that it would never raise a non-statutory ground of unpatentability or invalidity.*

### D. This Court Could Consider Whether The *Obiter Dicta* In The Panel Decision, Finding Non-Existent Relevance In PTA, Provides A Compelling Reason For Rehearing.

While the panel decision purports to be grounded on the implications of PTA on obviousness-type double patenting, *neither the parties (including the USPTO) nor the panel appears to have recognized that PTA was of no possible relevance whatsoever to the issue of obviousness-type double patenting.* As noted in footnote 3, exactly the same obviousness-type double patenting analysis leading to exactly the same conclusion of patent invalidity would have been required even if all the involved patents expired on the same day, i.e., even if PTA had not affected the respective expiration dates.

The apparent failure to recognize the irrelevancy of PTA to the invalidity holding by the panel suggests that there is a special urgency for the Court to act in this appeal to reassess its application of this law.

Respectfully submitted,

/s/ Robert A. Armitage
Robert A. Armitage
*Counsel for Amicus Curiae*
320 Seaview Court #1811
Marco Island, FL 34145
(703) 801-6334
raarmitage@aol.com

# United States Court of Appeals for the Federal Circuit

*In re Cellect, L.L.C.*, 2022-1293, -1294, -1295, -1296

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I caused the foregoing **BRIEF OF AMICUS CURIAE ROBERT A. ARMITAGE IN SUPPORT OF REHEARING EN BANC** to be filed via CM/ECF with the Clerk of the Court, thereby electronically serving it on all counsel of record in this matter.

Date: November 15, 2023

/s/ Robert A. Armitage

Robert A. Armitage
320 Seaview Court #1811
Marco Island, FL 34145
(703) 801-6334
raarmitage@aol.com

## CERTIFICATE OF COMPLIANCE

Amicus curiae certifies that:

1. The brief complies with the page limitation of Fed. Cir. R. 35(g)(3) because, excluding the exempted portions as provided in Fed. Cir. R. 32(b), it does not exceed either 10 double-spaced pages or 2,600 words.

2. The brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), because it has been prepared using Microsoft® Word for Microsoft 365 MSO (Version 2308 Build 16.0.16731.20182) 64-bit in a proportionally spaced typeface: Times New Roman, font size 14 point.

Date: November 15, 2023

/s/ Robert A. Armitage
Robert A. Armitage